[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12113

_____

D.C. Docket No. 3:13-cr-00004-DHB-BKE-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NATHAN E. GUNDY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(November 23, 2016)

Before HULL and JILL PRYOR, Circuit Judges, and CONWAY,[*] District Judge.

HULL, Circuit Judge:

Defendant Nathan E. Gundy appeals his conviction and 288-month sentence for being a convicted felon in possession of firearms.  The district court determined that Gundy was an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), because he had at least three prior Georgia burglary convictions, each of which qualified as a predicate "violent felony" under the enumerated crimes provision of the ACCA.  On appeal, Gundy challenges his designation as an armed career criminal under § 924(e).

After review of the record and with the benefit of oral argument, we affirm Gundy's conviction and sentence.

## I.  BACKGROUND

In December 2013, a jury found Gundy guilty on one count of being a convicted felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e).

The Presentence Investigation Report ("PSI") recommended a base offense level of 24, pursuant to U.S.S.G. § 2K2.1.  The PSI recommended (1) a 2-level increase under U.S.S.G. § 2K2.1(b)(1)(A) because the offense involved three

---

[*]Honorable Anne C. Conway, United States District Judge, for the Middle District of Florida, sitting by designation.

firearms,[1] (2) a 2-level increase under U.S.S.G. § 2K2.1(b)(4)(A) because the firearms Gundy possessed were stolen, and (3) a 4-level increase under U.S.S.G. § 2K2.1(b)(6)(B) because Gundy possessed the firearms in connection with another felony offense. These increases yielded an adjusted offense level of 32.

Gundy had numerous prior felony convictions, 17 criminal history points, and a criminal history category of VI, even without a § 924(e) enhancement. Gundy's offense level of 32 and criminal history category of VI would have yielded an advisory guidelines range of 210 to 262 months. Without a § 924(e) enhancement, Gundy's statutory maximum penalty would have been 120 months' imprisonment. See 18 U.S.C. § 924(a)(2).

The PSI, however, reported that Gundy was an armed career criminal under § 924(e) because he was previously convicted of seven burglary offenses in Georgia, namely: (1) a 2001 conviction for one count of burglary, (2) another 2001 conviction for four counts of burglary, each of which occurred on a separate occasion, (3) a 2005 conviction for one count of burglary, and (4) a 2006 conviction for one count of burglary. Gundy had pled guilty to each of those Georgia burglary offenses. The PSI provided that Gundy had other Georgia convictions for forgery, possession of cocaine, possession of marijuana, entering an automobile, and theft by taking.

---

[1]The three firearms were: (1) an FIE, Model E22, .22 caliber pistol, (2) a Smith and Wesson, Model 36, .38 caliber revolver, and (3) a Jimenez, Model J.A. Nine, 9mm caliber pistol.

3

Due to his status as an armed career criminal under § 924(e), Gundy's offense level increased from 32 to 34 under U.S.S.G. § 4B1.4(b)(3)(A). With a total offense level of 34 and a criminal history category of VI, Gundy's advisory guidelines range was 262 to 327 months' imprisonment.

Gundy's status as an armed career criminal under § 924(e) raised his statutory range of imprisonment to 15 years to life, rather than zero to 10 years.

As to the PSI, Gundy objected to the 2-level increase for possessing stolen firearms and the 4-level increase for possessing firearms in connection with another felony. He also objected to his designation as an armed career criminal on the ground that only two of his burglary convictions involved the burglary of a residence. According to Gundy, only "burglary of a residence" qualifies as a "violent felony" under the ACCA, and, therefore, he did not have the requisite three violent felony convictions to qualify as an armed career criminal.

At the April 2014 sentencing hearing, the district court overruled Gundy's objection to the 2-level increase for possessing stolen firearms, but sustained Gundy's objection to the 4-level increase for possessing the firearms in connection with another felony.

The district court also overruled Gundy's objection to his designation as an armed career criminal. The district court expressly deferred to the reasoning of the probation officer set forth in an addendum to the PSI. In that addendum, the

4

probation officer concluded that Gundy was an armed career criminal because the charging documents in each of Gundy's burglary convictions "reveal[ed] that each of those offenses [met] the elements of generic burglary (i.e., [Gundy] unlawfully entered a building or structure with the intent to commit a theft").

Because the district court sustained Gundy's objection to the 4-level increase, Gundy's total offense level became 33 under U.S.S.G. § 4B1.4(b).  With a total offense level of 33 and a criminal history category of VI, Gundy's advisory guidelines range was 235 to 293 months' imprisonment.  After considering the advisory guidelines range and the factors set forth in 18 U.S.C. § 3553(a), the district court sentenced Gundy to 288 months' imprisonment.  Gundy appealed his conviction and sentence.

Gundy makes several arguments challenging the validity of his § 922(g) conviction.  After our review of the record, we find that all of Gundy's arguments are without merit and affirm Gundy's conviction.  The only remaining issue is a sentencing one—whether the district court erred in concluding that Gundy's prior Georgia burglary convictions qualified as violent felonies under the ACCA.  Whether a particular conviction is a violent felony for purposes of the ACCA is a question of law we consider de novo.  United States v. Canty, 570 F.3d 1251, 1254 (11th Cir. 2009).

## II.  THE ACCA

A felon in possession of a firearm who has at least three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another," is subject to an enhanced statutory penalty under the ACCA.  18 U.S.C. § 924(e)(1).  The ACCA defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

> (i)     has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)    is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Id. § 924(e)(2)(B).  The first prong of this definition is sometimes referred to as the "elements clause," while the second prong contains the "enumerated crimes" and, finally, what is commonly called the "residual clause." [2]  United States v. Owens, 672 F.3d 966, 968 (11th Cir. 2012).

This case involves the enumerated crimes clause, which defines "violent felony," in part, as "burglary, arson, or extortion" and crimes that "involve[] use of explosives."  18 U.S.C. § 924(e)(2)(B)(ii).  In listing these crimes in § 924(e)(2), Congress referred only to the "generic" versions of those enumerated crimes.  See

---

[2] On June 26, 2015, the United States Supreme Court held that the residual clause of the ACCA is unconstitutionally vague.  Johnson v. United States, 576 U.S. ___, ___, ___, 135 S. Ct. 2551, 2557-58, 2563 (2015).  Accordingly, we do not consider whether Gundy's Georgia burglary convictions would alternatively qualify as violent felonies under the residual clause.

6

Taylor v. United States, 495 U.S. 575, 598, 110 S. Ct. 2143, 2158 (1990).  Further, an enumerated crime counts as an ACCA violent felony if its elements are the same as, or narrower than, those of the generic offense.  See id. at 599, 110 S. Ct. at 2158.

## III.  DISCUSSION

### A.    Elements-Based Analysis of a Prior Crime

The United States Supreme Court most recently articulated how to interpret and apply the ACCA's enumerated crimes provision in Mathis v. United States, 579 U.S. ___, 136 S. Ct. 2243 (2016).  In Mathis, the Supreme Court recognized that its opinion in Taylor "set out the essential rule governing ACCA cases more than a quarter century ago," which is that "[a]ll that counts under the [ACCA] . . . are the elements of the statute of conviction."  Mathis, 579 U.S. at ___, 136 S. Ct. at 2251 (quotation marks omitted).  "That simple point became a mantra" in the Supreme Court's subsequent ACCA decisions.  Id.  Indeed, the Supreme Court in Mathis pointed out that this "essential rule" has governed all of its ACCA decisions since Taylor:

> At the risk of repetition (perhaps downright tedium), here are some examples.  In Shepard : ACCA "refers to predicate offenses in terms not of prior conduct but of prior 'convictions' and the 'element[s]' of crimes." 544 U.S., at 19, 125 S.Ct. 1254 (alteration in original). In James v. United States : "[W]e have avoided any inquiry into the underlying facts of [the defendant's] particular offense, and have looked solely to the elements of [burglary] as defined by [state] law." 550 U.S. 192, 214, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007). In Sykes

7

v. United States : "[W]e consider [only] the elements of the offense [,] without inquiring into the specific conduct of this particular offender." 564 U.S. 1, 7, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011) (quoting James, 550 U.S., at 202, 127 S.Ct. 1586; emphasis in original). And most recently (and tersely) in Descamps: "The key [under ACCA] is elements, not facts." 570 U.S., at ___, 133 S.Ct., at 2283.

Id. at 2251-52.

Mathis thus drove home the point that focusing on the elements of the statute of conviction is, and always has been, the essential principle governing ACCA cases: "For more than 25 years, we have repeatedly made clear that application of ACCA involves, and involves only, comparing elements." Id. at 2257.

Mathis also instructs that "[t]he comparison of elements . . . is straightforward when a statute sets out a single (or 'indivisible') set of elements to define a single crime." Id. at 2248. In such cases, the court simply "lines up that crime's elements alongside those of the generic offense and sees if they match." Id. This is known as the "categorical approach." See id. at 2248.

Mathis notes, however, that some criminal statutes do not set out a single crime but "have a more complicated (sometimes called 'divisible') structure." Id. In fact, "[a] single statute may list elements in the alternative, and thereby define multiple crimes." Id. at 2249. If the statute sets out multiple crimes, it is "divisible." See id. Faced with a "divisible" statute, courts must identify which crime in the statute formed the basis of the defendant's conviction. See id. The Mathis Court stressed that "[t]o address that need, this Court approved the

8

'modified categorical approach' for use with statutes having multiple alternative elements." Id. Under the modified categorical approach, "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." Id. Courts must then compare the elements of that identified crime to the elements of the relevant generic offense. See id.

**B.      Disjunctive Phrasing**

Notably, the Supreme Court in Mathis explained more fully how courts should evaluate criminal statutes with "disjunctive phrasing." Id. at 2249, 2253. Specifically, a state's criminal statute may use terms like "or" that can signal either (1) the listing of alternative elements, thus creating multiple crimes, or (2) the listing of alternative means of committing a single offense with an indivisible set of elements. See id. at 2249.

If the statute lists alternative "elements," it is considered "divisible," and courts may employ the modified categorical approach to determine the elements of the defendant's conviction. Id. But if a statute merely lists "various factual means" of committing a single offense, then the statute is considered "indivisible," and that indivisible set of elements will be the basis of the defendant's conviction. See id. And if that indivisible statute "sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the

defendant actually committed the offense in its generic form." Descamps v. United States, 570 U.S. ___, ___, 133 S. Ct. 2276, 2283 (2013).

In Mathis, the Supreme Court also instructed that "[t]he first task for a sentencing court faced with an alternatively phrased statute is . . . to determine whether its listed items are elements or means." Mathis, 579 U.S. at ___, 136 S. Ct. at 2256. This determination—"elements or means?"—is a "threshold inquiry." Id. Thus, in an enumerated crimes ACCA case involving a statute with disjunctive or alternative phrasing, courts must first determine (1) whether that statutory alternative phrasing lists multiple alternative elements, thereby creating multiple offenses in a divisible statutory structure, or (2) whether that statutory alternative phrasing merely lists various factual means of satisfying one or more of the statute's otherwise indivisible set of elements.

## C.     Elements or Means?

More significantly though, the Supreme Court in Mathis added to its ACCA precedent by instructing courts how to discern "elements" from "means." "Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." Id. at 2248 (quotation marks omitted). "At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant; and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty." Id. at 2248. Facts and means, on the

10

other hand, "are mere real-world things—extraneous to the crime's legal requirements." Id. "They are circumstances or events having no legal effect or consequence . . . [and] need neither be found by a jury nor admitted by a defendant." Id. (quotation marks and alterations omitted).

The Supreme Court in Mathis enumerated several tools courts may use to determine whether a statute's "listed items are elements or means" or, put another way, whether a statute is "divisible." Id. at 2256. In doing so, the Supreme Court clarified when and how courts may look beyond the language of the statute, and may even go to parts of the state court record, to determine whether a statute lists alternative elements or alternative means. Id. at 2256-57.

As one tool, the Supreme Court explained that "the statute on its face may resolve the issue." Id. For example, "[i]f statutory alternatives carry different punishments, then under Apprendi they must be elements." Id. "Conversely, if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." Id. (citing United States v. Howard, 742 F.3d 1334, 1348 (11th Cir. 2014)). Additionally, "a statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)." Id.

As another tool, the Supreme Court stated that in conducting the elements-versus-means inquiry, federal sentencing courts can look to state court decisions

11

interpreting an alternatively phrased statute for guidance.  Id.  If a precedential state court decision makes clear that a statute's alternative phrasing simply lists "alternative methods of committing one offense," such that "a jury need not agree" on which alternative method the defendant committed in order to sustain a conviction, then the statute is not divisible.  Id. (quotation marks and alterations omitted).  "Armed with such authoritative sources of state law, federal sentencing courts can readily determine the nature of an alternatively phrased list."  Id.

As a third tool, the Supreme Court stated that "if state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself."  Id.  The Supreme Court explained that this "peek" at the record documents "is for the sole and limited purpose of determining whether the listed items are elements of the offense."  Id. at 2256-57 (quotation marks and alterations omitted).  This is a "peek" to answer the threshold means-or-elements question (i.e. the divisibility issue) and is not the full-blown modified categorical approach.

In explaining this "peek," the Supreme Court in Mathis said, (1) "Descamps previously recognized just this way of discerning whether a statutory list contains means or elements," and (2) that the Descamps Court "noted that indictments, jury instructions, plea colloquies and plea agreements will often reflect the crime's elements and so can reveal—in some cases better than state law itself—whether a statutory list is of elements or means."  Id. at 2257 n.7 (quotation marks omitted).

12

The Supreme Court then instructed: "Accordingly, when state law does not resolve the means-or-elements question, courts should resort to the record documents for help in making that determination." Id. (quotation marks and alterations omitted).

Most helpfully though, the Supreme Court in Mathis gave contrasting examples of how to implement this third tool for answering the elements-versus-means inquiry. In its first example, the Supreme Court noted that "an indictment and correlative jury instructions [could] charge a defendant with burgling a 'building, structure, or vehicle.'" Id. Those documents might also use "a single umbrella term like 'premises.'" Id. Either situation "is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." Id. Moreover, in each situation, "the record would . . . reveal what the prosecutor has to (and does not have to) demonstrate to prevail." Id. In a contrasting example, the Supreme Court noted that "[c]onversely, an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." Id. Again, this "peek" at the record is for answering the means-or-elements question, also called the divisibility question.

Finally, the Supreme Court acknowledged that "such record materials will not in every case speak plainly, and if they do not, a sentencing judge will not be

13

able to satisfy <u>Taylor</u>'s demand for certainty when determining whether a defendant was convicted of a generic offense." <u>Id.</u> (quotation marks omitted). However, the Supreme Court concluded that "between those documents and state law, that kind of indeterminacy should prove more the exception than the rule." <u>Id.</u> This makes good sense because state court indictments often will charge only <u>one</u> of the alternative terms, thereby indicating that a statute is divisible.

We now apply the principles and tools outlined in <u>Mathis</u> to this case.

**D.    Georgia's Burglary Statute is Broader than Generic Burglary**

We first identify the elements of generic burglary. The generic, contemporary definition of burglary consists of these elements: (1) an unlawful or unprivileged entry into, or remaining in, (2) a building or other structure, (3) with intent to commit a crime therein. <u>See</u> <u>Howard</u>, 742 F.3d at 1342; <u>Mathis</u>, 579 U.S. at ___, 136 S. Ct. at 2248.

Next, we examine whether Georgia's burglary statute has these elements. At the time of Gundy's seven prior felony burglary offenses in 2001, 2005, and 2006, Georgia's burglary statute provided as follows:

> A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof. . . .

14

Ga. Code Ann. § 16-7-1(a) (2011).[3] Section 16-7-1 criminalizes the following conduct: (1) entry into a dwelling house, a building, or other structures (2) "without authority," and (3) with "intent to commit a felony or theft therein." Id. Section 16-7-1 thus criminalizes conduct that would satisfy all the elements of a generic burglary.

However, at the time of Gundy's prior convictions, § 16-7-1 also criminalized conduct broader than the ACCA's generic definition of burglary. Specifically, § 16-7-1 encompassed not only unlawful entry into buildings or other structures, but also into vehicles, railroad cars, watercraft, or aircraft. See United States v. Bennett, 472 F.3d 825, 832 (11th Cir. 2006); see also Howard, 742 F.3d at 1342. Thus, § 16-7-1 is non-generic. See Bennett, 472 F.3d at 832.

The salient question, then, is whether § 16-7-1's alternative phrasing of the locational element—(1) dwelling house, or (2) building, vehicle, railroad car, watercraft, or other such structure designed for use as a dwelling, or (3) any other building, railroad car, aircraft, or any room or any part thereof—lists multiple alternative locational "elements" or various "means" of satisfying a single, indivisible set of elements.

---

[3]Georgia's burglary statute was amended on July 1, 2012, and had not been amended prior to that since 1980. See 2012 Ga. Laws 899; 1980 Ga. Laws 770. Accordingly, the 2011 version of Ga. Code Ann. § 16-7-1 was the statute under which Gundy was previously convicted.

15

Before examining the Georgia burglary statute, it is also helpful to review the Iowa burglary statute discussed in Mathis and the Alabama burglary statute discussed in Howard.

### E.    Iowa and Alabama Burglary Statutes

At issue in Mathis was the Iowa Code, which defines burglary in § 713.1 as "[a]ny person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure." Iowa Code § 713.1 (emphasis added). The Iowa statute employs a "single locational element," which is "occupied structure." Mathis, 579 U.S. at __, 136 S. Ct. at 2250; Iowa Code § 713.1.

Then, in a separate statute, § 702.12, the Iowa Code defines the term "occupied structure" as "any building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons." Iowa Code § 702.12.

In Mathis, the Supreme Court concluded that the Iowa burglary statute in § 713.1 defined "one crime, with one set of elements" with a single locational element of "occupied structure." Mathis, 579 U.S. at __, 136 S. Ct. at 2250. The Supreme Court explained that the listed locations in the separate § 702.12 definition were not "alternative elements" but were "alternative ways of satisfying the single locational element" in § 713.1. Id. In addition to the clear statutory text

16

of a single locational element in § 713.1, the Supreme Court also pointed out that the Iowa Supreme Court had held that the alternative premises in the § 702.12 definition were "alternative method[s]" of committing the offense, "so that the jury need not agree" whether the burgled location was a building, other structure, or vehicle. Id. (citing State v. Duncan, 312 N.W.2d 519, 532 (Iowa 1981)).

Similarly, in Howard, the Alabama statute that created the crime of burglary used a single locational element of "building."[4] Section 13A-7-7 provides that "[a] person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." Ala. Code § 13A-7-7(a) (2014) (emphasis added).

Then, in a separate statute in § 13A-7-1(2), the Alabama Code defines the term "building" as "[a]ny structure which may be entered and utilized by persons for business, public use, lodging or the storage of goods, and such term includes any vehicle, aircraft or watercraft used for the lodging of persons or carrying on business therein, and such term includes any railroad box car or other rail equipment or trailer or tractor trailer or combination thereof." Id. § 13A-7-1(2) (2014) (emphasis added).

---

[4]In 2015, Alabama changed the wording of the burglary statute in § 13A-7-7. 2015 Ala. Laws Act 2015-185. Then in 2016, the state also amended the definitional provision in § 13A-7-1. 2016 Ala. Laws 2016-402. Howard, which was decided in 2014, construed the pre-2015 versions of these provisions.

17

In Howard, this Court explained why the Alabama burglary statute was not divisible.  The Alabama statute did not "set[] out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile."  Howard, 742 F.3d at 1348.  "Instead, Alabama Code § 13A-7-1(2) provides one definition of building and then includes a non-exhaustive list of things that fall under that definition."  Id.  In Howard, this Court further pointed out that the word "includes" in § 13A-7-1(2) showed that the drafters "intended to provide a non-exhaustive list of examples to clarify the meaning of the term."  Id. (quoting Jean v. Nelson, 863 F.2d 759, 777 (11th Cir. 1988)).[5]

---

[5]Similar to the Iowa and Alabama statutes, the South Carolina Code uses a single locational element.  The South Carolina statute that creates the crime is § 16-11-312(A), which provides that "[a] person is guilty of burglary in the second degree if the person enters a dwelling without consent and with intent to commit a crime therein."  S.C. Code Ann. § 16-11-312(A) (emphasis added).

South Carolina then has two other separate statutes that define "dwelling" and "dwelling house."  In a separate statute, § 16-11-310, the South Carolina Code defines "dwelling," stating that "'[d]welling' means its definition found in Section 16-11-10 and also means the living quarters of a building which is used or normally used for sleeping, living, or lodging by a person."  Id. § 16-11-310.  In turn, § 16-11-10 provided that "a dwelling house, any house, outhouse, apartment, building, erection, shed or box in which there sleeps a proprietor, tenant, watchman, clerk, laborer or person who lodges there with a view to the protection of property shall be deemed a dwelling house."  Id. § 16-11-10.  Additionally, the word "building," as used in § 16-11-310, "means any structure, vehicle, watercraft, or aircraft."  Id. § 16-11-310(1).  Georgia's burglary statute is not at all like South Carolina's.  See United States v. Lockett, 810 F.3d 1262 (11th Cir. 2016) (outlining this complex statute and holding that the South Carolina burglary statute is not divisible).

18

**F.    Georgia's Burglary Statute**

We now turn to the text of Georgia's burglary statute.  "[S]entencing courts should usually be able to determine whether a statute is divisible by simply reading its text . . . ."  Howard, 742 F.3d at 1346.

In contrast to Iowa's statute in Mathis and the Alabama statute in Howard, the text of the Georgia burglary statute in § 16-7-1, that creates the crime, does not use a single locational element (like "occupied structure" or "building").  The Georgia law also does not contain a definition elsewhere that provides a non-exhaustive laundry list of other places or locations.  The Georgia statute also does not use the term "includes."

Rather, the Georgia burglary statute, that creates the crime of burglary, uses alternative locational elements.  Section 16-7-1 provides that "[a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within":

the dwelling house of another or

any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or

within any other building, railroad car, aircraft, or any room or any part thereof.

19

Ga. Code Ann. § 16-7-1(a) (2011) (emphasis added).[6]  Rather than a single locational element, the plain text of the Georgia statute has three subsets of different locational elements, stated in the alternative and in the disjunctive. Each of the three subsets enumerates a finite list of specific structures in which the unlawful entry must occur to constitute the crime of burglary.  In doing so, the burglary statute has multiple locational elements effectively creating several different crimes.  See Descamps, 570 U.S. at __, 133 S. Ct. at 2281 (explaining that an example of a divisible statute is one "stating that burglary involves entry into a building or an automobile").

This is why under Georgia law a prosecutor must select, identify, and charge the specific place or location that was burgled.  For example, the Georgia Court of Appeals has held that a burglary indictment must charge the particular place or premises burgled and the specific location of that place or premises.  See Morris v. State, 303 S.E.2d 492, 494 (Ga. Ct. App. 1983) (stating that "where the defendant is charged with burglary, the indictment must specify the location of the burglary" and concluding that the indictment was sufficient where it charged a "building," identified as "the Financial Aid Office and Alumni Office, located at Fort Valley State

---

[6]This was the text of the Georgia burglary statute from 1980 to 2011.  Prior to1968, the burglary statute also had this provision, which is no longer in the statute:  "All out-houses contiguous to or within the curtilage or protection of the mansion or dwelling-house, shall be considered as part of the same."  Compare Ga. Code 1933, § 26-2401 with Ga. Laws 1968, § 26-2401, p. 1249.

College, Fort Valley, Peach County, Georgia"); State v. Ramos, 243 S.E.2d 693, 693 (Ga. Ct. App. 1978) (stating it is not necessary to prove "the specific place" to obtain a theft-by-taking conviction, but it is necessary to prove the "specific location" to obtain a burglary conviction); State v. Green, 218 S.E.2d. 456, 457 (Ga. Ct. App. 1975); Chester v. State, 140 S.E.2d 52, 53 (Ga. Ct. App. 1964) ("It must be alleged and proved in an indictment for burglary that there was a breaking and entering of one of the classes of buildings set out in the statute."); Kidd v. State, 146 S.E. 35, 35 (Ga. Ct. App. 1928) (holding that the indictment was sufficient where it identified the location burgled as the protected structure of "railroad cars").

The U.S. Supreme Court has told us that "[a] prosecutor charging a violation of a divisible statute must generally select the relevant element from the list of alternatives." Descamps, 570 U.S. at __, 133 S. Ct. at 2290. That the Georgia prosecutor must select and identify the locational element of the place burgled— whether the place burgled was a dwelling, building, railroad car, vehicle, or watercraft—is the hallmark of a divisible statute. Indeed, in every case cited by Gundy and the government, the indictment specified the type of place or premises burgled. See, e.g., Weeks, 616 S.E.2d at 852 (a "dwelling house"); Davis v. State, 706 S.E.2d 710, 714 (Ga. Ct. App. 2011) (a "dwelling house"); Smarr v. State, 732 S.E.2d 110, 114-15 (Ga. Ct. App. 2012) (a "building" that served as a gas station);

21

Morris, 303 S.E.2d. at 494 (a "building" used as a "Financial Aid Office and Alumni Office").

That the prosecutor must select and identify the relevant statutory locational element is well illustrated by the Georgia court's decision in DeFrancis v. Manning, 246 Ga. 307 (1980). As quoted above, one of the alternative locational elements in the Georgia statute is a "vehicle . . . designed for use as the dwelling of another." Ga. Code Ann. § 16-7-1(a) (2011). The indictment in DeFrancis charged that the defendant "unlawfully without authority and with intent to commit a theft therein entered that certain vehicle, same being a gray Ford truck, being the property of and owned by McKesson Wine and Spirits Company, a division of Foremost-McKesson, Inc., said truck being located on 10th Avenue West in the City of Cordele, Crisp County, Georgia, at the time of said entry therein by the said accused." 246 Ga. at 307. The Georgia Supreme Court set aside the defendant's burglary conviction because the indictment did not charge that the vehicle was "designed for use as a dwelling." Id. at 308. The Georgia Supreme Court held, "that the vehicle was designed as a dwelling was an essential element of the offense which must be alleged." Id. (emphasis added). The fact that under Georgia law the indictment must charge the type of place or location with such specificity further demonstrates that § 16-7-1's statutory listing of alternative locations for committing a burglary constitutes an enumeration of alternative elements.

22

For all of the above reasons, we conclude that the alternative locational elements in the Georgia statute are divisible.  See United States v. Martinez-Garcia, 625 F.3d 196, 198 (5th Cir. 2010) (concluding that the Georgia burglary statute in § 16-7-1(a) is divisible and that the defendant's Georgia conviction for burglary of a dwelling house was a crime of violence under U.S.S.G. § 2L1.2). [7]

## G.    The Elements of Gundy's Prior Burglary Convictions are Generic

Our final task is to determine which of the alternative elements in Georgia's burglary statute formed the basis of Gundy's prior burglary convictions and whether those elements match the generic definition of burglary.  Having concluded that Georgia's burglary statute is divisible, we may use the modified categorical approach.  Mathis, 579 U.S. at __, 136 S. Ct. at 2249.  Under that approach, we look to "a limited class of documents (for example, the indictment, jury instructions or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of."  Id.  These are known as Shepard

---

[7]The dissent has found and cites Mobley v. State.  296 S.E.2d 617, 618 (Ga. Ct. App. 1982) (describing where the burglary occurred as the "Social Circle Drug Store, the property of Billy Snipes, located in the City of Social Circle, Walton County, Georgia") (emphasis added).  The dissent faults our analysis because this decision did not use the word "building."  We are confident that the term "drug store" sensibly means a building, not a vehicle, railroad car, or watercraft.  While one could theoretically operate a drug store out of a vehicle, we are not required to engage in such farfetched hypotheticals, especially given DeFrancis and other Georgia decisions discussed above.  If anything, the Mobley decision supports our conclusion that the prosecutor must charge and identify as an element the type of place that was burgled and its location.

23

documents.  Id.; Shepard v. United States, 544 U.S. 13, 26, 125 S. Ct. 1254, 1263 (2005).

The indictment for each one of Gundy's prior Georgia burglary convictions charged the type of place and the address of each burgled location.[8]  Two indictments charged that Gundy unlawfully, and with the intent to commit theft therein, entered a "dwelling house":  (1) "the dwelling house of another, to wit: Chiffon Jones, located at 403 Grand Street; Sandersville, Georgia;" and (2) "the dwelling house of another, to wit:  McArthur Jordan, located at 321 Tybee Street, Sandersville, Georgia."   Two other indictments charged that Gundy "unlawfully, without authority, and with intent to commit a theft therein" entered a "business house" described as:  (1) "the business house of another, to wit: David Bernice Hartley d/b/a E-Z Coin Laundry, located at East McCarty Street, Sandersville, Georgia;"[9]  and (2) "the business house of another, to wit: Bill Murphy d/b/a Murphy & Palmer Feed & Seed Company, located at 232 North Smith Street, Sandersville, Georgia."  Thus, all of the burgled locations were either dwelling houses or buildings housing a business, which are generic burglaries.  Importantly,

---

[8]Certified copies of all of Gundy's state court indictments and Gundy's guilty pleas thereto are in the record and are attached as an appendix to this opinion.

[9]Two other indictments charged that Gundy burgled this same E-Z Coin Laundry on East McCarty Street in Sandersville, Georgia but on separate occasions during the year 2000:  July 12; August 23; December 12; and December 14.  The December 12 and December 14 incidents were charged as two separate counts of burglary in the same indictment.  All told, Gundy was charged with and pled guilty to seven separate burglaries in six different indictments.

none were vehicles, railroad cars, watercrafts, or aircrafts, which are not generic burglaries.[10]

Accordingly, Gundy's state court indictments make clear that Gundy's Georgia burglary convictions involved these three elements: (1) an unlawful entry (2) into a dwelling house or building (3) with intent to commit a crime therein. See Ga. Code Ann. § 16-7-1(a) (2011). These elements substantially conform to the generic definition of burglary. See Howard, 742 F.3d at 1342. Therefore, Gundy's prior Georgia burglary convictions qualify as violent felonies under the ACCA's enumerated crimes clause. The district court did not err in sentencing Gundy as an armed career criminal.

## H.    Dissent's Discussion of Divisibility

The dissent relies heavily on Lloyd v. State, 308 S.E.2d 25 (Ga. Ct. App. 1983), but that case had nothing to do with the locational element, which the Georgia Supreme Court in DeFrancis told us is an "essential element." 246 Ga. at 308. The sole issue in Lloyd was whether the evidence was sufficient to prove "lack of authority on the defendant's part to enter the building." Lloyd, 308 S.E.2d at 25. The officer testified that "[t]he front door of the warehouse had been pried

---

[10]While the dissent focuses on jury instructions, Gundy did not proceed to trial but pled guilty. Here, we rely on the indictments, not pattern jury instructions never given. Indeed, the Supreme Court has told us that, in cases where the defendant pled guilty, we can look at the "closest analogs to the jury instructions," and that they are the indictments or charging information. Shepard, 544 U.S. at 20, 125 S. Ct. at 1249; see also Taylor, 495 U.S. at 602, 110 S. Ct. at 2160.

open."  Id.  The Lloyd court stated:  "there are two essential elements which must be established by the State:  1) lack of authority to enter the dwelling or building; 2) intent to commit a felony or theft."  Id. (emphasis added).  The Lloyd court concluded that the evidence in the officer's testimony "was sufficient to show the defendant's lack of authority to enter the building."  Id. at 26.  When placed in context, the two-element statement in Lloyd is about two elements of "lack of authority to enter" and "intent."  See id. at 25.  There was no issue in Lloyd about the location burgled or the essential locational element required under the Georgia statute.

Rather, the Georgia Supreme Court in DeFrancis tells us that the location burgled is a third "essential element" and that the locational element must be identified and charged with particularity in the indictment.  See 246 Ga. at 308.

In any event, as to its divisibility analysis, the dissent acknowledges that "if state law fails to provide clear answers [about a statute's divisibility], federal judges have another place to look:  the record of a prior conviction itself."  If nothing else, perhaps the discussions in the majority opinion and the dissent arguably suggest that Georgia law may not be as clear as either concludes.  So if the Georgia law is not clear as to elements or means, what happens next?  We agree with the dissent's divisibility analysis that the next step would be Mathis's "peek at the record."  The dissent, in its divisibility analysis, peeks at the record

26

and points out that two indictments specified a "dwelling house" and three specified a "business house."  Where we differ is this.  Those terms do not "speak plainly" enough for the dissent.  We, however, conclude that the terms "dwelling house" and "business house" satisfy Taylor's demand for certainty that Gundy's convictions were for burglary of a building or other structure, which is a generic burglary.

### III.  CONCLUSION

In light of the foregoing, we affirm Gundy's conviction and sentence.

**AFFIRMED.**

JILL PRYOR, Circuit Judge, dissenting:

The question we confront today is whether Nathan Gundy's prior burglary convictions in Georgia provide a basis for the enhanced federal sentence he currently serves. The majority and I agree on the basic framework for answering this question and even on how that framework applies here, up to a point. But we differ sharply in our views of Georgia law regarding the elements of the crime of burglary.

The majority and I agree that the Georgia burglary statute under which Mr. Gundy previously was convicted sweeps more broadly than the generic crime of burglary that can serve as a basis for an enhanced sentence. I cannot agree, though, with the balance of the majority's analysis. I dissent because we cannot, consistent with Supreme Court and our own precedent, divide and narrow the Georgia statute in a way that would permit us to construe Mr. Gundy's burglary convictions as authorizing the term of incarceration he now serves. And I dissent because the majority's analysis affirming Mr. Gundy's enhanced sentence has serious implications far beyond this case. The majority's misinterpretation of Georgia law will decide the fate of countless individuals who stand to serve unjustly expanded prison terms as a result.

The district court ruled that Mr. Gundy's prior Georgia burglary convictions

28

each constituted a "violent felony" and thus support an enhanced sentence under the Armed Career Criminal Act, ("ACCA"), 18 U.S.C. § 924(e).  As relevant here, the term "violent felony" includes the crime of burglary.  *Id.* § 924(e)(2)(B)(ii).  But the crime of burglary's inclusion among ACCA's violent felonies does not mean that a conviction under *Georgia's* burglary statute qualifies as a violent felony.  For Georgia burglary to qualify, all or part of the statute must criminalize what the Supreme Court has termed "generic" burglary; that is, it must "contain[] at least the following elements:  an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 598 (1990).  If the statute in its entirety criminalizes generic burglary, then our analysis is easy:  a violation of the statute can support an ACCA enhancement.  But if it doesn't, we have to decide whether we can divide the statute up into elements that make up generic burglary.  This task is not as easy, as state statutes can be complex, but the Supreme Court has on several occasions given us guidance, most recently in *United States v. Mathis*, 136 S. Ct. 2243 (2016).  There, the Court reiterated that the key question is whether the state statute sets forth alternative elements, which means that the statute is divisible, or merely alternative factual means of committing the offense, which means that the statute is not divisible, and therefore a conviction under it cannot serve as a predicate offense for an ACCA enhancement.  *See id.* at 2249.

29

The majority and I agree that with its inclusion of vehicles, railroad cars, watercraft, and aircraft as types of locations that can be burglarized, Georgia's burglary statute is broader than the generic crime of burglary, which applies only to structures. Indeed, in considering a similarly broad state statute, *Mathis* held that "vehicles" are not structures and thus fall outside the scope of generic burglary. *See* 136 S. Ct. at 2250. But turning to the question of whether these alternative types of locations are elements of the crime of burglary in Georgia or merely means of committing it, the majority and I part ways. I disagree that the burglary statute's text and structure support the majority's conclusion that the types of locations the statute lists are elements rather than means. This conclusion ignores the Supreme Court's guidance and the plain meaning of the Georgia statute. I also disagree that Georgia case law supports the majority's conclusion. To the contrary, this case law unambiguously defines the elements of the crime of burglary, and the different types of locations that can be burglarized are not separate elements. The majority errs in determining that "burglary of a dwelling" and "burglary of a building" are separate crimes in Georgia.

Even if I were to accept, for the sake of argument, that Georgia law is ambiguous on whether the different types of locations that can be burglarized are elements or means of committing the offense, the inquiry would not end there. *Mathis* instructs courts considering statutes that are ambiguous in this respect to

30

"peek" at the record documents of prior convictions "for the sole and limited purpose of determining whether the [statute's] listed items are elements of the offense." 136 S. Ct. at 2256–57 (internal quotation marks and alterations omitted). But in this case, those documents leave us unable to "satisfy [the] demand for certainty when determining whether a defendant was convicted of a generic offense" that can serve as an ACCA predicate. *Id.* at 2257 (internal quotation marks omitted). After all, of the two locational terms listed in Mr. Gundy's indictments, one does not even appear in Georgia's burglary statute and thus cannot constitute an element. Mr. Gundy's indictments therefore fail to demonstrate that the different types of locations where the burglaries occurred were elements that the jury had to find beyond a reasonable doubt. In my view, these points lead to only one possible conclusion: Georgia's burglary statute is broader than generic burglary, and is indivisible; it cannot be a violent felony under ACCA. I would reverse and remand for the district court to resentence Mr. Gundy without an ACCA enhancement.

## I.    DISCUSSION

The analytical framework on which the majority and I agree compels the conclusion that the Georgia burglary statute under which Mr. Gundy was convicted is indivisible. The statute defines burglary as follows:

> A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or

31

remains within *the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another* or enters or remains within *any other building, railroad car, aircraft, or any room or any part thereof. . . .*

O.C.G.A. § 16-7-1(a) (2011) (emphasis added).[1]  Below, I demonstrate this statute's indivisibility in two parts.  First, I review Georgia law, which tells us the elements of burglary.  This is where I would end our inquiry, as we are not free to contradict Georgia's courts on matters of state law.  *See Schad v. Arizona*, 501 U.S. 624, 636 (1991).

Second, because the majority reads Georgia law to reach the opposite conclusion, I assume for the sake of argument that state law is ambiguous on the elements-versus-means question and, as *Mathis* instructs, look beyond it to the record of Mr. Gundy's convictions for the answer.  But the record, too, is inconclusive.  Thus, even assuming Georgia law is ambiguous such that we can look to Mr. Gundy's record at all, we would still lack the "certainty" required to determine that the various types of locations listed in Georgia's statute are elements rather than means.  *Mathis*, 136 S. Ct. at 2257 (internal quotation marks omitted).  Without that certainty, a conviction under the statute cannot qualify as a violent felony under ACCA.

---

[1] This version of the statute, which has since been amended, is the relevant one for our purposes because it was in effect at the time of Mr. Gundy's burglary convictions.  When I refer to the Georgia burglary statute, I refer to this version.

32

**A.    Georgia Law Establishes the Georgia Burglary Statute's Indivisibility.**

Georgia's courts have set forth the elements of burglary, making it clear that the state's burglary statute is indivisible.  The Georgia Court of Appeals declared in a precedential decision that it is "readily apparent there are two essential elements [of the crime of burglary] which must be established by the State:  1) lack of authority to enter the *dwelling or building*; 2) intent to commit a felony or theft."  *Lloyd v. State*, 308 S.E.2d 25, 25 (Ga. Ct. App. 1983) (emphasis added).  Entering without authority either a "dwelling or building" is part of the same "essential element[]," a single element encompassing the types of locations that can be burglarized.[2]  *Id.*

So why does the Georgia courts' grouping of "dwelling" and "building" into a single element necessarily answer the elements-versus-means question with respect to vehicles, railroad cars, and watercraft?  It does so for two reasons.  First, the statute's use of the term "dwelling" itself includes locations other than the type of structures that generic burglary encompasses.  In Georgia, a person commits the crime of burglary when, without authority and with the intent to commit a felony

---

[2] Other Georgia decisions have framed the location element in slightly different terms, substituting "dwelling *place*" or "dwelling *house*" for "dwelling."  *See, e.g.*, *Roberts v. State*, 710 S.E.2d 878, 881 (Ga. Ct. App. 2011) (upholding validity of jury instructions where court charged jury on the burglary statute's "requirement of proof that a defendant entered 'the building or dwelling place of another'"); *Hart v. State*, 517 S.E.2d 790, 792 (Ga. Ct. App. 1999) (upholding, as "sufficient to inform the jury of the essential elements of the offense" of burglary, jury instruction that stated, in part, a defendant "enters in a building or dwelling house of another").  But these slight variations make no difference to the elements-versus-means analysis.

or theft therein, he enters or remains within ". . . any building, vehicle, railroad car, watercraft, *or other such structure designed for use as the dwelling of another . . . .*" O.C.G.A. § 16-7-1(a) (emphasis added). By using the restrictive clause "or other such structure designed for use as the dwelling of another," the statute unambiguously defines vehicles, railroad cars, and watercraft as possible dwellings. *Id.* So a defendant may be convicted of burglarizing a "dwelling" whether he has entered unlawfully an apartment, which would be a structure falling within the purview of generic burglary structure, or a motorhome or a houseboat, which would not.

Second, in the statute "building" appears twice, both times as part of a series. Both series include types of locations that generic burglary excludes. As a matter of syntax and logic, if one item in the series, "building," is not a separate element because the Georgia courts tells us it is part of the same element as "dwelling," then the others in the series are not separate elements either. For these reasons, *Lloyd*'s statement of burglary's elements, which groups "building" and "dwelling" together, compels the conclusion that the location types listed in the Georgia burglary statute are alternate means rather than elements.

An examination of Georgia jury instructions confirms *Lloyd*'s statement of burglary's elements. The language used in jury instructions is significant because it must always include the crime's elements, that is, "what the jury must find

34

beyond a reasonable doubt to convict the defendant." *Mathis*, 136 S. Ct. at 2248.

Georgia courts consistently have upheld jury instructions listing "building or

dwelling" as part of a single element. *See, e.g.*, *Dukes v. State*, 592 S.E.2d 473,

477 (Ga. Ct. App. 2003) (upholding against unspecified claim of error jury

instruction that "it's only necessary to prove burglary in Georgia that . . . the

accused did, without authority, enter a building or dwelling house of another with

the intent to commit the alleged felony"); *Hart v. State*, 517 S.E.2d 790, 792–93

(Ga. Ct. App. 1999) (deeming "sufficient to inform the jury of the essential

elements of" burglary a jury instruction that included "enters in a building or

dwelling house of another"); *see also, e.g.*, *Long v. State*, 705 S.E.2d 889, 674–75

(Ga. Ct. App. 2011) (calling "complete and correct" a jury instruction that included

"enters any building or dwelling place of another"). Indeed, Georgia's pattern jury

instructions for burglary state that a person commits burglary when "without

authority, that person enters . . . any building or dwelling place of another . . . with

the intent" to commit theft or another felony. GAJICRIM 2.62.10 (4th ed. 2016);

*id.* 2.62.20 (4th ed. 2016).[3] Georgia jury instructions and the cases approving them

thus confirm *Lloyd*'s statement of the burglary elements. That is, burglary of a

dwelling and burglary of a building are not separate crimes.

---

[3] Although dated 2016, these instructions apply to cases "where the offense is alleged to have occurred before July 1, 2012" because they reference the pre-2012 statute that we interpret today. *See* GAJICRIM 2.62.10.

The majority dismisses *Lloyd*'s clear statement of law, asserting that the case "had nothing to do with the locational element" at issue here. Maj. Op. at 26. True, the types of places that could be burglarized were not at issue in *Lloyd*. But accepting the majority's position requires us to assume that the Georgia Court of Appeals meant something other than what it said when it described the elements of the crime. And the numerous cases approving jury instructions with language like *Lloyd*'s confirm that it correctly stated burglary's elements.

Rejecting these clear statements by Georgia courts of the elements of Georgia burglary, the majority argues that the text and structure of the burglary statute unambiguously establish its divisibility and that case law confirms this interpretation. First, the majority contends that the statute's disjunctive phrasing and lack of a single locational term with a separate definition section make it divisible. But *Mathis* and persuasive authority counsel otherwise. Second, it asserts that Georgia's burglary statute "enumerates a finite list of specific structures," as a divisible statute must. The statute's plain text contradicts this assertion, however. Third, the majority points to Georgia cases about the requirements for an indictment as confirming its textual interpretation. In fact, though, these cases concern notice to the defendant and double jeopardy, not the elements of the crime. I address each of the majority's points in turn.

36

First, the majority contends that the statute's use of the disjunctive and lack of a single locational term with a separate definition section establish its divisibility. Relying solely on the word "or," and making creative use of spacing to amplify its point, the majority determines that the statute "has three subsets of different locational elements, stated in the alternative and in the disjunctive." *See* Maj. Op. at 20. The majority then contrasts this structure with those of the state burglary statutes held to be indivisible in *Mathis*, 136 S. Ct. at 2250 (Iowa), *United States v. Lockett*, 810 F.3d 1262, 1269–70 (11th Cir. 2016) (South Carolina), and *United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014) (Alabama). *See* Maj. Op. at 19–20, 19 n.5. The majority notes that each of these other statutes included "a single locational element" and then in a separate section or statute defined that term with a list of alternative means of committing the crime. *Id.* Georgia's burglary statute, however, contains no single locational element with a separate definitions section, and so the majority posits its list of alternate locations must be elements rather than means. Maj. Op. at 20.

As the majority acknowledges, Maj. Op. at 9–10, *Mathis* makes clear that alternative phrasing is a necessary—but by no means sufficient—condition to read a statute as setting out alternative elements. *See* 136 S. Ct. at 2256 ("The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means."). *Mathis* then lists two

37

attributes of an alternatively phrased statute that would confirm its divisibility.

First, "[i]f statutory alternatives carry different punishments, then under *Apprendi*[4]

they must be elements." *Id.* Second, "a statute may itself identify which things

must be charged (and so are elements) and which need not be (and so are means)."

*Id.* Neither is present in this case, however. Absent these attributes, or something

equally compelling, alternate phrasing is neutral with respect to the elements-

versus-means inquiry.

Although state statutes with a single locational element defined separately

have been held to be indivisible in *Mathis*, *Lockett*, and *Howard*, there is no truth

to the converse, that the lack of a single locational element with a separate

definition section means a disjunctively phrased statute is divisible. Indeed, one of

our sister circuits recently held a statute with disjunctive language and without a

separate definition section to be indivisible. *See United States v. Barcenas-Yanez*,

826 F.3d 752 (4th Cir. 2016) (holding Texas aggravated assault statute was

indivisible as to intent element where assault required "intentionally, knowingly, or

recklessly caus[ing] bodily injury to another"). Quite simply, the fact that the

Georgia statute has a different structure proves nothing.

Second, the majority asserts as supporting its textual interpretation that the

burglary statute sets out a "finite list of specific structures." Maj. Op. at 20. This

---

[4]*Apprendi v. New Jersey*, 530 U.S. 466, (2000).

finite list—along with the disjunctive phrasing and lack of a single locational term with a separate definition section discussed above—leads the majority to the conclusion that Georgia's burglary statute sets out "multiple locational elements effectively creating several different crimes." Maj. Op. at 20.

The wording of Georgia's burglary statute, however, contradicts the majority's assertion. The statute includes among its list of locations that can be burglarized "other such structure[s] designed for use as the dwelling of another." O.C.G.A. § 16-7-1(a) (2011). The phrase "other such structure[s]" cannot be part of a finite list because it is necessarily expansive: Any type of structure that is designed for use as a dwelling would qualify. For example, a travel trailer,[5] although absent from the list, undoubtedly qualifies as "such [a] structure designed for use as the dwelling of another" that is capable of being burglarized in Georgia. While Georgia's statute does not use the word "includes," *see* Maj. Op. at 18–19 (noting that the Georgia statute does not use the term "includes," unlike the Alabama statute held indivisible in *Howard*), the phrase "other such" serves essentially the same function. The statute lays out no finite list of structures; thus it cannot "effectively creat[e] several different crimes." Maj. Op. at 20.

---

[5] "A travel trailer is a non-motorized RV designed to be towed by a pickup truck, SUV or, for smaller units, even a car." "What is a travel trailer," *RVNetLinx*, http://rvnetlinx.com/wprvtypes.php?cat=tt [https://perma.cc/KR2P-YRH4] (last visited Nov. 18, 2016); *see also United States v. Guerrero-Navarro*, 737 F.3d 976, 979 (5th Cir. 2013) ("Consider, for example . . . travel trailers. These are not buildings, but they may nevertheless be dwellings in the ordinary sense. So although a certain venue may not qualify as a *Taylor*-approved building or structure, it may still . . . constitute a dwelling." (citations omitted)).

Third, the majority argues that Georgia case law concerning the adequacy of indictments confirms its interpretation. It contends that because Georgia prosecutors must specify the location of a burglary in the indictment, the different locations must be elements. This argument confuses location (e.g., "the Financial Aid Office and Alumni Office, located at Fort Valley State College, Fort Valley, Peach County, Georgia"), *Morris v. State*, 303 S.E.2d 492, 494 (Ga. Ct. App. 1983), with type of location (e.g., a "building"). *Id.* It is true that an indictment charging burglary must identify the specific location and ownership of the allegedly burglarized place. *See id.* But Georgia law imposes no requirement that an indictment include the type of location burglarized. Oftentimes, as in the case of the Financial Aid Office building in *Morris*, an indictment will identify both. But it need not do so.[6] For example, the Georgia Court of Appeals approved of "Social Circle Drug Store, the property of Billy Snipes, located in the City of Social Circle, Walton County, Georgia" as a sufficient description of a burglarized location in an indictment. *Mobley v. State*, 296 S.E.2d 617, 618 (Ga. Ct. App. 1982). This indictment specified the location of the burglary, but not the type of

---

[6] The majority cites two cases, *Chester v. State*, 140 S.E.2d 52 (Ga. Ct. App. 1964), and *Kidd v. State*, 146 S.E. 35 (Ga. Ct. App. 1928), that predate the 1968 enactment of the burglary statute at issue in this case. The previous statute contained entirely different elements—as the majority's quotation of *Chester*, which includes "breaking and entering" among these elements, demonstrates—so cases interpreting it are irrelevant to our analysis. Maj. Op. at 21 (quoting *Chester*, 140 S.E.2d at 53).

location that was burglarized.  Was Billy Snipes's drug store in a building?[7]

Almost certainly.  But the indictment itself neglects to say so and was nevertheless

upheld—meaning that the type of location the defendant allegedly entered need not

be specified in the indictment.

More fundamentally, the majority misapprehends the purpose of requiring

the burglary's location to be included in indictments.  The majority speculates that

the multiple types of locations listed in the Georgia burglary statute must be "why

under Georgia law a prosecutor must select, identify, and charge the specific place

or location that was burgled."  Maj. Op. at 21.  This speculation lacks support.

Rather, as a case the majority cites makes clear, an indictment must include the

location burglarized in order "to give the defendant ample opportunity to prepare a

defense."  *Morris*, 303 S.E.2d at 494.  The many indictment cases on which the

majority relies never considered whether the types of locations listed in Georgia's

burglary statute are alternative elements or means of committing the crime because

these cases were concerned only with the need to "inform the accused as to the

---

[7] The majority critiques my reliance on *Mobley* because it is "confident that the term 'drug *store*' sensibly means a building, not a vehicle, railroad car, or watercraft."  Maj. Op. at 23 n.7.  Perhaps.  But what if an indictment stated that the defendant burglarized "the Orient Express Restaurant, 2921 Paces Ferry Rd SE, Cobb County, Georgia"?  Certainly this would provide a location sufficient to satisfy *Morris*.  *See* 303 S.E.2d at 494.  And we might feel confident that the term "restaurant" sensibly means a building.  Further research would reveal, however, that the Orient Express Restaurant is housed in a railroad car.  *See* Marisa Roman, *This Train in Georgia is Actually a Restaurant and You Need to Visit*, OnlyInYourState (Aug. 27, 2016), http://www.onlyinyourstate.com/georgia/restaurant-train-in-ga/ [https://perma.cc/4UJT-UMHP].

41

charges against him so that he may present his defense and not . . . be taken by surprise" and to "protect the accused against another prosecution for the same offense." *Smarr v. State*, 732 S.E.2d 110, 115 (Ga. Ct. App. 2012).

One of these cases deserves particular attention. The majority argues that *DeFrancis v. Manning*, 271 S.E.2d 209 (Ga. 1980), demonstrates "[t]hat the prosecutor must select and identify the relevant statutory locational element" when charging Georgia burglary. Maj. Op. at 22. I take it that by this the majority means that the prosecutor must specify whether the store, restaurant, or dwelling burglarized was in a building or a railroad car. But *DeFrancis* demonstrates no such thing. In *DeFrancis*, the Georgia Supreme Court upheld a lower court's decision overturning a defendant's conviction for burglarizing a truck. 271 S.E.2d at 210. The appellate court held the conviction was invalid because Georgia law only criminalized entering without authority "any . . . vehicle . . . designed for use as the dwelling of another," *id.* (quoting O.C.G.A. § 26-1601 (1968)), and "no proof was offered at trial that the truck was 'designed for the use as the dwelling of another.'" *Id.* For the same reason, the *DeFrancis* court held that the indictment was flawed because it failed to allege that the truck was designed as a dwelling. *See id.* This omission was not error because—as the majority incorrectly surmises—Georgia burglary indictments must always include a single type of location. The question in *DeFrancis* was not whether the burglary occurred in a

42

truck versus a building, but rather whether the truck met the statute's requirement that it be designed for use as a dwelling. Thus, the indictment in *DeFrancis* was flawed because it did not allege a crime at all.[8] In other words, *DeFrancis* did not bar a burglary indictment from listing "building, dwelling, truck, or railroad car designed for use as a dwelling." It merely said that an indictment must specify a location that the statute makes it a crime to enter.

The majority's many indictment cases are unhelpful because they offer no answer to the determinative question: at trial, what must a Georgia jury find beyond a reasonable doubt to convict the defendant of burglary? *See Mathis*, 136 S. Ct. at 2248. *Lloyd* and the many cases approving jury instructions similarly listing burglary's elements, by contrast, answer that very question: the jury must find that the defendant entered a building or dwelling, but not whether it was a building or a dwelling or what type of dwelling. The Georgia burglary statute thus is indivisible as between buildings and all types of dwellings, including vehicles, boats, and railroad cars.

## B.    The Record of Mr. Gundy's Convictions Fails to Prove Georgia Burglary Is Divisible.

We need not (indeed, may not) look past clear Georgia law, which should end our inquiry. But given our disagreement about the import of the cases it cites

---

[8] Burglary did not cover non-dwelling automobiles, and the crime of illegally entering an automobile was not enacted until two years after Mr. DeFrancis's conviction. *See* O.C.G.A. § 16-8-18; *see also* Ga. L. 1976, p. 186, § 1.

43

and the cases I cite above, the majority and I can agree that perhaps Georgia law is

at least ambiguous on the elements-versus-means question.  The Supreme Court

advised us in *Mathis* that "if state law fails to provide clear answers [about a

statute's divisibility], federal judges have another place to look:  the record of a

prior conviction itself."[9]  136 S. Ct. at 2256.  Unfortunately, though, the language

---

[9] While I undertake this analysis for the sake of argument, I am skeptical that the
language in one person's indictment alone could ever establish that a statute *is* divisible.  *Mathis*
dictates that courts "may look only to the elements of the offense, not to the facts of the
defendant's conduct."  136 S. Ct. at 2251 (internal quotation marks and alterations omitted).  If
we were to conclude that Georgia's burglary statute is divisible solely on the language in Mr.
Gundy's indictments, I fear we would be violating this foundational precept.

Didn't *Mathis* expressly authorize inquiry into the language of a defendant's indictments?
Yes and no.  Yes, *Mathis* allowed recourse to record documents like indictments, but not, in my
view, in a way that would allow a defendant's indictments alone to prove conclusively that a
statute is divisible.  To be sure, *Mathis* provided relatively little guidance to courts taking the
"peek" it authorized into record documents.  *Id.* at 2256.  The opinion included three examples of
situations where such documents could help answer the divisibility question.  The first two
examples described circumstances demonstrating conclusively that a statute is *indivisible*.  In
contrast, the third example outlined a scenario indicating that a statute could be *divisible*:  "[A]n
indictment and jury instructions could indicate, by referencing one alternative term to the
exclusion of all others, that the statute contains a list of elements, each one of which goes toward
a separate crime."  *Id.* at 2257.

This third example is quite different from the first two—both of which employed
deductive methods to determine that a statute was indivisible—because it relies on reasoning by
induction.  Just because the indictment in one case lists a particular statutory term to the
exclusion of others does not necessarily mean that term is an element.  If any jury in the state
validly could convict a defendant without deciding among multiple statutory terms, then those
terms are means, not elements.  By the same token, a prosecutor's decision to include only one of
those terms in a given indictment does not necessarily mean that term is an element.  Indeed,
*Mathis* instructed us on the relative strength of the conclusions to be drawn from its three
examples.  Where the first two examples provided "as clear an indication as any" that a statute
was indivisible, the third example "*could* indicate" that a statute is divisible.  *Id.* (emphasis
added).

What's more, the meager record we have in this case would render this third example
even more equivocal if we found it applied here.  *Mathis*'s third example concerns "an
indictment *and jury instructions*."  *Id.* (emphasis added).  The inclusion of jury instructions is

44

in Mr. Gundy's indictments—the only record documents we have available—is itself too ambiguous to "satisfy *Taylor*'s demand for certainty when determining whether a defendant was convicted of a generic offense." *Id.* at 2257 (internal quotation marks omitted).

Mr. Gundy's burglary indictments charge him with burglarizing either a "dwelling house" or a "business house." The two indictments charging Mr. Gundy with burglarizing a "dwelling house" cohere with the majority's hypothesis that "dwelling house" is one of several alternative locational elements in the statute, meaning that the statute is divisible among the types of locations that can be burglarized. The term "dwelling house" does, after all, appear in the list of alternative locations in the statute. *See* O.C.G.A. § 16-7-1(a) (2011).

But the other indictments charging Mr. Gundy with burglarizing a "business house" seem to contradict the majority's hypothesis. Nowhere does § 16-7-1 reference a "business house." *See id.* We can probably safely assume that these

---

significant because they must always include the crime's elements, that is, "what the jury must find beyond a reasonable doubt to convict the defendant." *Id.* at 2248. Here, because Mr. Gundy pled guilty to each of his prior burglary offenses, "the closest analogs to jury instructions would be . . . the statement of factual basis for the charge, shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea." *United States v. Shepard*, 544 U.S. 13, 20 (2005). Unfortunately, though, the only records we have of Mr. Gundy's guilty pleas are his signatures on the various indictments charging him. The record before us includes neither jury instructions nor plea colloquies. *Mathis* in no way suggests that indictments alone could be enough to indicate with sufficient "certainty" to satisfy *Taylor* that the statute is divisible. *Mathis*, 136 S. Ct. at 2257 (internal quotation marks omitted). In my view, one person's indictments, standing alone, are simply too inconclusive to prove a statute divisible.

business houses were buildings, but because "business house" appears nowhere in the text of the statute, that the burglary occurs in a business house cannot be an element of the crime.[10]  And if some of Mr. Gundy's indictments did not charge the location of the burglary as an element, why should we assume that the others—referencing "dwelling house[s]"—did?  We cannot make this unfounded assumption.  Thus, even taking *Mathis*'s "peek at the record," Mr. Gundy's indictments point in opposite directions and therefore fail to answer the question whether the types of locations listed in Georgia's burglary statute are elements or means.

*Mathis* instructs courts what to do when state law and the records of a conviction are inconclusive regarding a statute's divisibility.  When these sources do not "speak plainly," courts "will not be able to satisfy *Taylor*'s demand for certainty when determining whether a defendant was convicted of a generic offense."  *Mathis*, 136 S. Ct. at 2257 (internal quotation marks omitted); *see also* Maj. Op. at 14 (recognizing this limitation).  In my view, state law does speak plainly in this case, and as a result, I would hold Georgia's burglary statute to be

---

[10] Georgia law confirms the general proposition that the elements of a crime are derived from the text of the statute creating that crime.  The state's criminal code provides that "[n]o conduct constitutes a crime unless it is described as a crime in [the code] or in another statute of this state."  O.C.G.A. § 16-1-4.  The code further provides that one of its "general purposes" is "[t]o define that which constitutes each crime. . . ."  *Id.* § 16-1-2(3).  Taken together, these portions of the code mean that all Georgia crimes are statutory and that the criminal code itself defines each crime.  Because the term "business house" does not appear in the text of Georgia's burglary statute, it cannot be part of that crime's definition, so it cannot be an element.  *See id.* § 16-7-1(a).

indivisible.  But even rejecting clear Georgia case law, the majority acknowledges that perhaps Georgia law is at least ambiguous.  *See* Maj. Op. at 27.  It then argues that the terms "dwelling house" and "business house" in Mr. Gundy's indictments satisfy *Taylor*'s demand for certainty that his convictions were for generic burglary.  Maj. Op. at 27.  This conclusion misconceives the appropriate inquiry under *Mathis* at this stage of the analysis:  whether the indictments demonstrate that Georgia's burglary statute lists elements not means.  136 S. Ct. at 2256–57.  The majority should acknowledge that the two terms found in Mr. Gundy's indictments—one of which cannot be found in the text of the statute and therefore cannot be an element—provide insufficient clarity to conclude that Georgia's burglary statute is divisible.

## II.    CONCLUSION

Today, contrary to state case law by which we are bound, the majority declares Georgia's burglary statute divisible and therefore capable of qualifying as a violent felony under ACCA.  Not only is the decision the majority makes today wrong in Mr. Gundy's case, but it likely will also substantially increase the prison terms of scores of future defendants.  In recent years, around 700 defendants each year have been convicted in this Circuit of being a felon in possession of a

47

firearm.[11]  Such a conviction ordinarily carries "a 10-year *maximum* penalty."  *See id.* at 2248.  But ACCA imposes a 15-year *mandatory minimum* sentence where a defendant has been convicted of three violent felonies, including generic burglary. *See id.*  In the 32 years that the version of Georgia's burglary statute we interpret today was in effect, tens of thousands of defendants were imprisoned for committing burglary in Georgia.[12]  In fact, burglary is the most common crime for which people are imprisoned in Georgia.[13]  These numbers, when considered together, mean that thousands of defendants stand to have their sentences increased by at least five years each based on the majority's decision today.  This ruling, which I believe is contrary to Georgia law, will have a monumental impact and, in my view, result in the unlawful incarceration of scores of inmates.  I would hold Georgia's burglary statute indivisible, vacate Mr. Gundy's sentence, and remand for resentencing without an ACCA enhancement.  I respectfully dissent.

---

[11] From 2011 through 2015, 3,398 defendants in the Eleventh Circuit were convicted of being a felon in possession of a firearm.  *See* U.S. Sentencing Comm'n, Number of Offenders Convicted of Felon in Possession, 11th Circuit, Fiscal Years 1996 through 2015 (generated Oct. 24, 2016) (on file with the Clerk).

[12] From 2005 through 2011, 17,077 defendants were imprisoned for burglary, an average of over 2,400 a year.  *See* Ga. Dept't of Corrections, Inmate Statistical Profile, Inmates Admitted During CYs 2005–2011, available at http://www.dcor.state.ga.us/Research/Annual_CY_profile_ inmate_admissions [https://perma.cc/6L8R-UPH4].

[13] Burglary was the most common crime for which people were imprisoned every year between 2005 and 2011 except 2006 and 2007.  *See id.*

48

# Appendix

ACCUSATION NO. _OOCR127_
WASHINGTON SUPERIOR COURT, DECEMBER TERM, 2000

STATE OF GEORGIA

vs.                          Charge: Burglary

NATHAN EDWARD GUNDY

## ACCUSATION

Filed in office, this _1st_ day of _March_____, 20_01_.

_Jay N. Conner_
CLERK, SUPERIOR COURT

The defendant, **NATHAN EDWARD GUNDY**, waives being formally arraigned, waives copy of accusation, and pleads _Guilty_____. This _1st_ day of _March_____, 20_01_.

_Nathan Gundy_
DEFENDANT

_Will WRatley_
DEFENDANT'S ATTORNEY

_____
DISTRICT ATTORNEY

WITNESSES FOR THE STATE:

Brad Kennedy, SPD
David Bernice Hartley



ATTEST: A TRUE COPY

Certified in _April 19, ___

_____
Deputy Clerk, Washington County

USAO-000173

MIN. & FINAL RECORD 78, Pg. 310

IN THE SUPERIOR COURT OF WASHINGTON COUNTY
STATE OF GEORGIA

STATE OF GEORGIA                        *
                                       *     Accusation No. OOR127
                                       *     December Term, 2000
        vs.                            *
                                       *
                                       *
NATHAN EDWARD GUNDY                     *     Burglary

## ACCUSATION

On behalf of the people of the State of Georgia, the undersigned District Attorney or duly appointed Assistant District Attorney for the Middle Judicial Circuit of Georgia, as prosecuting attorney for the county and state aforesaid, does hereby charge and accuse **NATHAN EDWARD GUNDY** with the offense of **BURGLARY** (O.C.G.A. § 16-7-1); for that the said accused on July 12, 2000, in the county aforesaid, did then and there unlawfully, without authority, and with the intent to commit a theft therein, enter the business house of another, to wit: David Bernice Hartley d/b/a E-Z Coin Laundry, located at East McCarty Street, Sandersville, Georgia, contrary to the laws of the state of Georgia, the good order, peace, and dignity thereof.

This _____1st_____ day of ___March___, 20_01_.

_____
Assistant District Attorney

Office of the District Attorney
Post Office Drawer J
Swainsboro, Georgia  30401
(478) 237-7846

USAO-000174

CONSENT TO FILING OF ACCUSATION,
WAIVER OF GRAND JURY INDICTMENT,
WAIVER OF JURY TRIAL, PLEA OF GUILTY

The accused having been bound over to the superior court of said county or being confined in jail pending commitment trial or being in jail, having waived commitment trial, does hereby expressly waive indictment by grand jury in accordance with the appropriate provisions of law; and

The aforenamed accused expressly consents to the filing of the foregoing accusation by the District Attorney; and

The aforenamed accused expressly consents that the judge of said superior court may open the court at this time without the presence of either grand jury or traverse jury to receive and act upon the plea of the aforenamed accused; and

The aforenamed accused expressly waives trial by jury and consents to trial by the judge alone without the intervention of a jury upon the foregoing accusation by the District Attorney; and

The aforenamed accused acknowledges that, before any action herein indicated, the accused has been fully advised as to all of his rights in connection with all of the matters here concerned, and all of the action herein taken by him has been taken by him with full knowledge of all such legal rights; and

The aforenamed accused acknowledges that, prior to any of the actions taken by the accused in this matter, the accused has been fully advised as to his rights to the services of an attorney at law in all stages of the proceeding against the accused; and accused has been advised that in the event he is unable to employ an attorney the court will appoint an attorney to represent the accused; and the accused acknowledges that the court in this instance expressly offered to appoint an attorney to advise and represent the accused.

Upon the foregoing accusation, including each and every charge and count therein contained, the aforenamed accused waives formal arraignment, waives copy and list of witnesses, and pleads guilty.

This _____1st_____ day of ___March_____, 20_01_.

_____
Accused

_____
Attorney for Accused

_____
District Attorney

USAO-000175

IN THE SUPERIOR COURT OF _____Washington_____ COUNTY, GEORGIA

STATE OF GEORGIA

VS.

CRIMINAL ACTION NO. __00 CR 127__

OFFENSE(S) ___Burglary___

_____Nathan Edward Gundy_____,
07# 84345166          DEFENDANT

___December___ TERM, __2010__

## FINAL DISPOSITION

☑ PLEA:

☑ NEGOTIATED
☑ GUILTY ON COUNT(S)___
☐ NOLO CONTENDERE ON
   COUNT(S)___
☐ TO LESSER INCLUDED
   OFFENSE(S)___
☐ ON COUNT(S)___

☐ VERDICT:
☐ JURY / ☐ NON-JURY
☐ GUILTY ON
   COUNT(S)___
☐ NOT GUILTY ON
   COUNT(S)___
☐ GUILTY OF INCLUDED
   OFFENSE(S) OF___
   ON COUNT(S)___

☐ OTHER DISPOSITION

☐ NOLLE PROSEQUI ORDER ON
   COUNT(S)___
☐ DEAD DOCKET ORDER ON
   COUNT(S)___

☐ ~~DEFENDANT WAS ADVISED OF THE RIGHT TO REVIEW BY A SUPERIOR COURTS SENTENCE REVIEW PANEL~~

WHEREAS, the above-named defendant has been found guilty of the above-stated offense(s), it is hereby ORDERED AND ADJUDGED by the Court that the said defendant is hereby sentenced to confinement for a period of _Five (5) years concurrent with any other sentence_

_Credit for time served._

in the State Penal System or such other institution as the Commissioner of the State Department of Corrections or the Court may direct, to be computed as provided by law.

THE DEFENDANT WAS REPRESENTED BY THE HONORABLE __Will Whatley__ ATTORNEY AT LAW, OF ___Irwin___ COUNTY, GEORGIA, BY ~~(EMPLOYMENT)~~ (APPOINTMENT).

IT IS SO ORDERED, this _1st_ day of ___March___, _2011_.

Filed In Office This
1st Day of _March_  200__.

_Joy N. Conner_
Clerk, Superior Court

_Kathryn L. Plyman_
Judge, Superior Court of Said County
Middle Judicial Circuit of Georgia

USAO-000176

ACCUSATION NO. ___OOCR128___

WASHINGTON SUPERIOR COURT, DECEMBER TERM, 2000

STATE OF GEORGIA

vs.                              Charge: Burglary

NATHAN EDWARD GUNDY

## ACCUSATION

Filed in office, this __1st__ day of __March__, 20__01__.

*Jay H. Conner*

CLERK, SUPERIOR COURT

The defendant, **NATHAN EDWARD GUNDY**, waives being formally arraigned, waives copy of accusation, and pleads *guilty in best interest*. This __1st__ day of __March__, 20__01__.

*Nathan Gundy*

DEFENDANT

*Will Whatley*

DEFENDANT'S ATTORNEY

DISTRICT ATTORNEY

WITNESSES FOR THE STATE:

Brad Kennedy, SPD
David Bernice Hartley



ATTEST A TRUE COPY

Certified to _____

Deputy Clerk, Washington County

USAO-000177

IN THE SUPERIOR COURT OF WASHINGTON COUNTY
STATE OF GEORGIA

STATE OF GEORGIA                          *

                                          *     Accusation No. 00ce12?
                                          *     December Term, 2000
        vs.                               *
                                          *
                                          *
NATHAN EDWARD GUNDY                        *     Burglary
_____

## ACCUSATION

On behalf of the people of the State of Georgia, the undersigned District Attorney or duly appointed Assistant District Attorney for the Middle Judicial Circuit of Georgia, as prosecuting attorney for the county and state aforesaid, does hereby charge and accuse **NATHAN EDWARD GUNDY** with the offense of BURGLARY (O.C.G.A. § 16-7-1); for that the said accused on August 23, 2000, in the county aforesaid, did then and there unlawfully, without authority, and with the intent to commit a theft therein, enter the business house of another, to wit: David Bernice Hartley d/b/a E-Z Coin Laundry, located at East McCarty Street, Sandersville, Georgia, contrary to the laws of the state of Georgia, the good order, peace, and dignity thereof.

This ____1st____ day of ____March____, 20_01_.

_____
Assistant District Attorney

Office of the District Attorney
Post Office Drawer J
Swainsboro, Georgia  30401
(478) 237-7846

USAO-000178

## CONSENT TO FILING OF ACCUSATION,
## WAIVER OF GRAND JURY INDICTMENT,
## WAIVER OF JURY TRIAL, PLEA OF GUILTY

The accused having been bound over to the superior court of said county or being confined in jail pending commitment trial or being in jail, having waived commitment trial, does hereby expressly waive indictment by grand jury in accordance with the appropriate provisions of law; and

The aforenamed accused expressly consents to the filing of the foregoing accusation by the District Attorney; and

The aforenamed accused expressly consents that the judge of said superior court may open the court at this time without the presence of either grand jury or traverse jury to receive and act upon the plea of the aforenamed accused; and

The aforenamed accused expressly waives trial by jury and consents to trial by the judge alone without the intervention of a jury upon the foregoing accusation by the District Attorney; and

The aforenamed accused acknowledges that, before any action herein indicated, the accused has been fully advised as to all of his rights in connection with all of the matters here concerned, and all of the action herein taken by him has been taken by him with full knowledge of all such legal rights; and

The aforenamed accused acknowledges that, prior to any of the actions taken by the accused in this matter, the accused has been fully advised as to his rights to the services of an attorney at law in all stages of the proceeding against the accused; and accused has been advised that in the event he is unable to employ an attorney the court will appoint an attorney to represent the accused; and the accused acknowledges that the court in this instance expressly offered to appoint an attorney to advise and represent the accused.

Upon the foregoing accusation, including each and every charge and count therein contained, the aforenamed accused waives formal arraignment, waives copy and list of witnesses, and pleads guilty.

This _1st_ day of _March_ , 20 _01_ .

_Nathan Grantly_
Accused

_Wm. Whitley_
Attorney for Accused

_District Attorney_

USAO-000179

IN THE SUPERIOR COURT OF ___Washington___ COUNTY, GEORGIA

STATE OF GEORGIA

VS.

CRIMINAL ACTION NO. ___00CR128___

OFFENSE(S) ___Burglary___

___Nathan Edward Grady___,
07# 84345951
DEFENDANT

___December___ TERM, 2001

## FINAL DISPOSITION

☑ PLEA:

☑ NEGOTIATED
☑ GUILTY ON COUNT(S)_____
☐ NOLO CONTENDERE ON COUNT(S)_____
☐ TO LESSER INCLUDED OFFENSE(S)_____
ON COUNT(S)_____

☐ VERDICT:
☐ JURY / ☐ NON-JURY
☐ GUILTY ON COUNT(S)_____
☐ NOT GUILTY ON COUNT(S)_____
☐ GUILTY OF INCLUDED OFFENSE(S) OF_____ ON COUNT(S)_____

☐ OTHER DISPOSITION

☐ NOLLE PROSEQUI ORDER ON COUNT(S)_____
☐ DEAD DOCKET ORDER ON COUNT(S)_____

☐ ~~DEFENDANT HAS A WAIVER OF THE RIGHT TO REVIEW BY A SUPERIOR COURTS SENTENCE REVIEW PANEL~~

WHEREAS, the above-named defendant has been found guilty of the above-stated offense(s), it is hereby ORDERED AND ADJUDGED by the Court that the said defendant is hereby sentenced to confinement for a period of ___five (5) years concurrent with any other sentence___

___Credit for time served___

in the State Penal System or such other institution as the Commissioner of the State Department of Corrections or the Court may direct, to be computed as provided by law.

THE DEFENDANT WAS REPRESENTED BY THE HONORABLE ___Will Whath___ ATTORNEY AT LAW, OF ___Toombs___ COUNTY, GEORGIA, BY (~~EMPLOYMENT~~) (APPOINTMENT).

IT IS SO ORDERED, this ___1st___ day of ___March___, ___2001___.

Filed In Office This
___1st___ Day of ___March___ ___2001___.

___Jay H. Conner___
Clerk, Superior Court

___Judge, Superior Court of Said County
Middle Judicial Circuit of Georgia___

USAO-000180

ACCUSATION NO. 00CR129
WASHINGTON SUPERIOR COURT, DECEMBER TERM, 2000

STATE OF GEORGIA

vs.                                    Charge: Burglary

NATHAN EDWARD GUNDY

## ACCUSATION

Filed in office, this _1st_ day of _March_ , 20_01_ .

_Joy H. Conner_
CLERK, SUPERIOR COURT

The defendant, **NATHAN EDWARD GUNDY**, waives being formally arraigned, waives copy of accusation, and pleads _Guilty_ . This _1st_ day of _March_ , 20_01_.

_Nathan Gundy_
DEFENDANT

_Will W Estey_
DEFENDANT'S ATTORNEY

_____
DISTRICT ATTORNEY

WITNESSES FOR THE STATE:

Brad Kennedy, SPD
Michael Joel Cochran, SPD
Bill Murphy
Kirby Hall



ATTEST A TRUE COPY
Certified _April 19 2013_
_____
Deputy Clerk Washington County



SEAL

USAO-000181

MIN. & FINAL RECORD 78, Pg. 348

IN THE SUPERIOR COURT OF WASHINGTON COUNTY
STATE OF GEORGIA

STATE OF GEORGIA                          *
                                          *     Accusation No. 00CR129
                                          *     December Term, 2000
        vs.                               *
                                          *
                                          *
NATHAN EDWARD GUNDY                        *     Burglary

## ACCUSATION

On behalf of the people of the State of Georgia, the undersigned District Attorney or duly appointed Assistant District Attorney for the Middle Judicial Circuit of Georgia, as prosecuting attorney for the county and state aforesaid, does hereby charge and accuse **NATHAN EDWARD GUNDY** with the offense of **BURGLARY** (O.C.G.A. § 16-7-1); for that the said accused on November 10, 2000, in the county aforesaid, did then and there unlawfully, without authority, and with the intent to commit a theft therein, enter the business house of another, to wit: Bill Murphy d/b/a Murphy & Palmer Feed & Seed Company, located at 232 North Smith Street, Sandersville, Georgia, contrary to the laws of the state of Georgia, the good order, peace, and dignity thereof.

This ____1st____ day of ____March____, 20_01_.

_____
Assistant District Attorney

Office of the District Attorney
Post Office Drawer J
Swainsboro, Georgia  30401
(478) 237-7846

USAO-000162

CONSENT TO FILING OF ACCUSATION,
WAIVER OF GRAND JURY INDICTMENT,
WAIVER OF JURY TRIAL, PLEA OF GUILTY

The accused having been bound over to the superior court of said county or being confined in jail pending commitment trial or being in jail, having waived commitment trial, does hereby expressly waive indictment by grand jury in accordance with the appropriate provisions of law; and

The aforenamed accused expressly consents to the filing of the foregoing accusation by the District Attorney; and

The aforenamed accused expressly consents that the judge of said superior court may open the court at this time without the presence of either grand jury or traverse jury to receive and act upon the plea of the aforenamed accused; and

The aforenamed accused expressly waives trial by jury and consents to trial by the judge alone without the intervention of a jury upon the foregoing accusation by the District Attorney; and

The aforenamed accused acknowledges that, before any action herein indicated, the accused has been fully advised as to all of his rights in connection with all of the matters here concerned, and all of the action herein taken by him has been taken by him with full knowledge of all such legal rights; and

The aforenamed accused acknowledges that, prior to any of the actions taken by the accused in this matter, the accused has been fully advised as to his rights to the services of an attorney at law in all stages of the proceeding against the accused; and accused has been advised that in the event he is unable to employ an attorney the court will appoint an attorney to represent the accused; and the accused acknowledges that the court in this instance expressly offered to appoint an attorney to advise and represent the accused.

Upon the foregoing accusation, including each and every charge and count therein contained, the aforenamed accused waives formal arraignment, waives copy and list of witnesses, and pleads guilty.

This _____1st_____ day of ___March_____, 20_01_.

_____
Accused

_____
Attorney for Accused

_____
District Attorney

USAO-000183

IN THE SUPERIOR COURT OF ___Washington___ COUNTY, GEORGIA

STATE OF GEORGIA

CRIMINAL ACTION NO. __00 CR 129__

OFFENSE(S) __Burglary__

VS.

___Nathen Edward Ford,___, ___December___ TERM, 2000

O7# 41726145

DEFENDANT

## FINAL DISPOSITION

☑ PLEA:

☑ NEGOTIATED
☑ GUILTY ON COUNT(S)_____
☐ NOLO CONTENDERE ON
  COUNT(S)_____
☐ TO LESSER INCLUDED
  OFFENSE(S)_____
ON COUNT(S)_____

☐ VERDICT:
☐ JURY / ☐ NON-JURY
☐ GUILTY ON
  COUNT(S)_____
☐ NOT GUILTY ON
  COUNT(S)_____
☐ GUILTY OF INCLUDED
  OFFENSE(S) OF_____
  ON COUNT(S)_____

☐ OTHER DISPOSITION

☐ NOLLE PROSEQUI ORDER ON
  COUNT(S)_____
☐ DEAD DOCKET ORDER ON
  COUNT(S)_____

~~☐ DEFENDANT WAS ADVISED OF THE RIGHT TO REVIEW BY A SUPERIOR COURTS SENTENCE REVIEW PANEL~~

WHEREAS, the above-named defendant has been found guilty of the above-stated offense(s), it is hereby ORDERED AND ADJUDGED by the Court that the said defendant is hereby sentenced to confinement for a period of __five (5) years concurrent with any other sentence__ __Credit for time served.__

in the State Penal System or such other institution as the Commissioner of the State Department of Corrections or the Court may direct, to be computed as provided by law.

THE DEFENDANT WAS REPRESENTED BY THE HONORABLE __Will Whatley__, ATTORNEY AT LAW, OF __El Turk__ COUNTY, GEORGIA, BY (~~EMPLOYMENT~~) (APPOINTMENT).

IT IS SO ORDERED, this __1st__ day of __March__, 19 2011.

Filed In Office This
1st Day of __March__, 2011.

___Joy H. Crews___
Clerk, Superior Court

___Kathy S. Palmer___
Judge, Superior Court of Said County
Middle Judicial Circuit of Georgia

USAO-000184

ACCUSATION NO. 00CR131
WASHINGTON SUPERIOR COURT, DECEMBER TERM, 2000

STATE OF GEORGIA

vs.

Charges: Burglary (Two Counts)

NATHAN EDWARD GUNDY

## ACCUSATION

Filed in office, this _1st_ day of _March_, 200_1_.

_Joy H. Conner_
CLERK, SUPERIOR COURT

The defendant, **NATHAN EDWARD GUNDY**, waives being formally arraigned, waives copy of accusation, and pleads _Guilty_. This _1st_ day of _March_, 20 _01_.

_Nathan Gundy_
DEFENDANT

_Will Whatley_
DEFENDANT'S ATTORNEY

_____
DISTRICT ATTORNEY

WITNESSES FOR THE STATE:

Brad Kennedy, SPD
Mark A. Baucom, SPD
David Bernice Hartley
Pauline Roberson
Quinton Harris
Rashad Harris





USAO-000189

IN THE SUPERIOR COURT OF WASHINGTON COUNTY
STATE OF GEORGIA

STATE OF GEORGIA                    *
                                   *    Accusation No. 00e131
                                   *    December Term, 2000
    vs.                            *
                                   *
                                   *
NATHAN EDWARD GUNDY                 *    Burglary (Two Counts)

## ACCUSATION

**Count 1:** On behalf of the people of the State of Georgia, the undersigned District Attorney or duly appointed Assistant District Attorney for the Middle Judicial Circuit of Georgia, as prosecuting attorney for the county and state aforesaid, does hereby charge and accuse **NATHAN EDWARD GUNDY** with the offense of **BURGLARY (O.C.G.A. § 16-7-1);** for that the said accused on **December 12, 2000,** in the county aforesaid, did then and there unlawfully, without authority, and with the intent to commit a theft therein, enter the business house of another, to wit: David Bernice Hartley d/b/a E-Z Coin Laundry, located at East McCarty Street, Sandersville, Georgia, contrary to the laws of the state of Georgia, the good order, peace, and dignity thereof.

**Count 2:** The undersigned, as prosecuting attorney for the county and state aforesaid, does further charge and accuse **NATHAN EDWARD GUNDY** with the offense of **BURGLARY (O.C.G.A. § 16-7-1);** for that the said accused on **December 14, 2000,** in the county aforesaid, did then and there unlawfully, without authority, and with the intent to commit a theft therein, enter the business house of another, to wit: David Bernice Hartley d/b/a E-Z Coin Laundry, located at East McCarty Street, Sandersville, Georgia, contrary to the laws of the state of Georgia, the good order, peace, and dignity thereof.

This ___1st___ day of ___March___, 20_01_.

_____
Assistant District Attorney

Office of the District Attorney
Post Office Drawer J
Swainsboro, Georgia  30401
(478) 237-7346

USAO-00190

CONSENT TO FILING OF ACCUSATION,
WAIVER OF GRAND JURY INDICTMENT,
WAIVER OF JURY TRIAL, PLEA OF GUILTY

The accused having been bound over to the superior court of said county or being confined in jail pending commitment trial or being in jail, having waived commitment trial, does hereby expressly waive indictment by grand jury in accordance with the appropriate provisions of law; and

The aforenamed accused expressly consents to the filing of the foregoing accusation by the District Attorney; and

The aforenamed accused expressly consents that the judge of said superior court may open the court at this time without the presence of either grand jury or traverse jury to receive and act upon the plea of the aforenamed accused; and

The aforenamed accused expressly waives trial by jury and consents to trial by the judge alone without the intervention of a jury upon the foregoing accusation by the District Attorney; and

The aforenamed accused acknowledges that, before any action herein indicated, the accused has been fully advised as to all of his rights in connection with all of the matters here concerned, and all of the action herein taken by him has been taken by him with full knowledge of all such legal rights; and

The aforenamed accused acknowledges that, prior to any of the actions taken by the accused in this matter, the accused has been fully advised as to his rights to the services of an attorney at law in all stages of the proceeding against the accused; and accused has been advised that in the event he is unable to employ an attorney the court will appoint an attorney to represent the accused; and the accused acknowledges that the court in this instance expressly offered to appoint an attorney to advise and represent the accused.

Upon the foregoing accusation, including each and every charge and count therein contained, the aforenamed accused waives formal arraignment, waives copy and list of witnesses, and pleads guilty.

This _____1st_____ day of ___March_____, 20_01_.

_____
Accused

_____
Attorney for Accused

_____
District Attorney

USAO-000191

IN THE SUPERIOR COURT OF ___Washington___ COUNTY, GEORGIA

STATE OF GEORGIA

CRIMINAL ACTION NO. __00 CR 131__

OFFENSE(S) _Cord 1 + 2: Burglary_

VS.

___Nathan Edward Grndy___,
OTH 41726145    DEFENDANT

___December___ TERM, _2000_

## FINAL DISPOSITION

☑ PLEA:

☑ NEGOTIATED
☑ GUILTY ON COUNT(S) _1 & 2_
☐ NOLO CONTENDERE ON COUNT(S)___
☐ TO LESSER INCLUDED OFFENSE(S)___
ON COUNT(S)___

☐ VERDICT:
☐ JURY / ☐ NON-JURY
☐ GUILTY ON COUNT(S)___
☐ NOT GUILTY ON COUNT(S)___
☐ GUILTY OF INCLUDED OFFENSE(S) OF___ ON COUNT(S)___

☐ OTHER DISPOSITION

☐ NOLLE PROSEQUI ORDER ON COUNT(S)___
☐ DEAD DOCKET ORDER ON COUNT(S)___

☐ DEFENDANT WAS ADVISED OF THE RIGHT TO REVIEW BY A SUPERIOR COURT SENTENCE REVIEW PANEL

WHEREAS, the above-named defendant has been found guilty of the above-stated offense(s), it is hereby ORDERED AND ADJUDGED by the Court that the said defendant is hereby sentenced to confinement for a period of _five (5) years on Cords 1 & 2, concurrent and concurrent with any other sentence_ _Credit for time served_

in the State Penal System or such other institution as the Commissioner of the State Department of Corrections or the Court may direct, to be computed as provided by law.

THE DEFENDANT WAS REPRESENTED BY THE HONORABLE _Will Whatley_ ATTORNEY AT LAW, OF _____ COUNTY, GEORGIA, BY (EMPLOYMENT) (APPOINTMENT).

IT IS SO ORDERED, this _1st_ day of _March_, _2011_.

Filed In Office This _1st_ Day of _March_, 20__

___ Clerk, Superior Court

___ Judge, Superior Court of Said County
Middle Judicial Circuit of Georgia

USAO-000192

INDICTMENT NO. 04CR128
WASHINGTON SUPERIOR COURT, DECEMBER TERM, 2004

STATE OF GEORGIA

vs.                          Charge: Burglary

NATHAN EDWARD GUNDY

## INDICTMENT

_____ True _____ BILL

_____
FOREPERSON

Returned in open court by the grand jury bailiff, announced by the court, and filed in office, this _13th_ day of _December_, 20_04_.

_____
CLERK, SUPERIOR COURT

The defendant, _____, waives being formally arraigned, waives copy of indictment, and pleads _Not Guilty_. This _3rd_ day of _Feb._, 20_05_.

_____
DEFENDANT

_____
DEFENDANT'S ATTORNEY

_____
DISTRICT ATTORNEY

WITNESSES FOR THE STATE:

'Brad Kennedy, SPD
'Chiffon Jones
Mark A. Baucom, SPD
Kenneth W. Mercer, SPD
Demarshio Curry
Dronika Madison

THE DEFENDANT WITHDRAWS HIS PLEA OF NOT GUILTY & ENTERS HIS PLEA OF GUILTY THIS _6_ DAY OF _June_ 20 _05_

_____ DEFENDANT

_____ DEFENDANT'S ATTY

_____ DISTRICT ATTORNEY

USAO-000201

IN THE SUPERIOR COURT OF WASHINGTON COUNTY
STATE OF GEORGIA

## INDICTMENT

NO. _O4CR128_

The grand jurors selected, chosen, and sworn for said county, to-wit:

Lewis M. West, Foreperson  
Evelyn J. Huntley, Assistant Foreperson  
Pendry W. Braswell, Clerk  
Michelle R. Clark  
Patricia E. Rountree  
Robert L. Jenkins  
Denise B. Dixon  
Brenda W. Hilson  
Daniel G. May  
Mamie L. Miles  
Victor Royal  
Daniel L. Jones  

Kevin S. Morris  
Geraldine S. White  
Judith A. Pate  
Sandy L. Strickland  
Leon E. Anthony III  
Clarence Hodges  
Sandra Martin  
Elizabeth Lamar  
Benjamin A. Allen  
Judy M. Peavy  
David Irwin

in the name and behalf of the citizens of Georgia, charge and accuse NATHAN EDWARD GUNDY with the offense of BURGLARY (O.C.G.A. § 16-7-1) for that the said NATHAN EDWARD GUNDY on December 8, 2003, in the county aforesaid, did then and there unlawfully, without authority, and with the intent to commit a theft therein, enter the dwelling house of another, to wit: Chiffon Jones, located at 403 Grand Street, Sandersville, Georgia, contrary to the laws of the state of Georgia, the good order, peace, and dignity thereof.

WASHINGTON SUPERIOR COURT  
DECEMBER TERM, 2004  

STEVE ASKEW  
DISTRICT ATTORNEY

USAO-000202

FINAL DISPOSITION                                    SC-6                                    CLYDE CASTLEBERRY COMPANY

## THE SUPERIOR COURT OF __WASHINGTON__ COUNTY, GEORGIA    FINAL DISPOSITION

CRIMINAL ACTION NO. __04-CR-128__

### THE STATE

OFFENSE(S) __BURGLARY__

VS.

__NATHAN   EDWARD   GUNDY__

OTN: __113026130__                                    __JUNE__      TERM, 20__05__

**PLEA:**
☒ NEGOTIATED
☒ GUILTY ON COUNT(S) __1__
☐ NOLO CONTENDERE ON COUNT(S) _____
☐ TO LESSER INCLUDED OFFENSE(S) _____
ON COUNT(S) _____

☐ JURY
☒ NON-JURY

**VERDICT:**
☐ GUILTY ON COUNT(S) _____
☐ NOT GUILTY ON COUNT(S) _____
☐ GUILTY OF INCLUDED OFFENSE(S) OF _____ ON COUNT(S) _____

**OTHER DISPOSITION:**
☐ NOLLE PROSEQUI ORDER ON COUNT(S) _____
☐ DEAD DOCKET ORDER ON COUNT(S) _____

(SEE SEPARATE ORDER)

☐ DEFENDANT WAS ADVISED OF HIS/HER RIGHT TO HAVE THIS SENTENCE REVIEWED BY THE SUPERIOR COURTS SENTENCE REVIEW PANEL

### ☒ FELONY SENTENCE   ☐ MISDEMEANOR SENTENCE

WHEREAS, the above-named defendant has been found guilty of the above-stated offense, WHEREUPON, it is ordered and adjudged by the Court that: The said defendant is hereby sentenced to confinement for a period of __THREE (3) YEARS, CONSECUTIVE TO ANY OTHER SENTENCE__ in the State Penal System or such other institution as the Commissioner of the State Department of Corrections or Court may direct, to be computed as provided by law, HOWEVER, it is further ordered by the Court:

☒ 1) THAT the above sentence may be served on probation

☐ 2) THAT upon service of _____ of the above sentence, the remainder of _____ may be served on probation PROVIDED that the said defendant complies with the following general and other conditions herein imposed by the Court as part of this sentence.

### ☒ GENERAL CONDITIONS OF PROBATION

The defendant, having been granted the privilege of serving all or part of the above-stated sentence on probation, hereby is sentenced to the following general conditions of probation:

☒ 1) Do not violate the criminal laws of any governmental unit.
☒ 2) Avoid injurious and vicious habits – especially alcoholic intoxication and narcotics and other dangerous drugs unless prescribed lawfully.
☒ 3) Avoid persons or places of disreputable or harmful character.
☒ 4) Report to the Probation-Parole Supervisor as directed and permit such Supervisor to visit him(her) at home or elsewhere.
☒ 5) Work faithfully at suitable employment insofar as may be possible.
☒ 6) Do not change his(her) present place of abode, move outside the jurisdiction of the Court, or leave the State for any period of time without prior permission of the Probation Supervisor.
☒ 7) Support his(her) legal dependants to the best of his(her) ability.
☒ 8) Probationer shall, from time to time, upon oral or written request by any Probation Officer, produce a breath, urine, and/or blood specimen for analysis for the possible presence of a substance prohibited or controlled by any law of the State of Georgia or of the United States.

### ☐ OTHER CONDITIONS OF PROBATION

IT IS FURTHER ORDERED that the defendant pay a fine in the amount of _____ plus $50 or 10%, whichever is less pursuant to O.C.G.A. 15-21-70, and pay restitution in the amount of _____ Probation Fee _____ Court Costs _____ Attorney's Fees. Payments are: _____

IT IS THE FURTHER ORDER of the Court, and the defendant is hereby advised that the Court may, at any time, revoke any conditions of this probation and/or discharge the defendant from probation. The probationer shall be subject to arrest for violation of any condition of probation herein granted. If such probation is revoked, the Court may order the execution of the sentence which was originally imposed or any portion thereof in the manner provided by law after deducting therefrom the amount of time the defendant has served on probation. The defendant was represented by the Honorable __JOSEPH E. STOUFFER__, Attorney at Law, __WASHINGTON__ County, by (Employment)(Appointment) __MJC PD OFFICE__

By _____ __JUNE__ _____, 20 __05__

So ordered this __6th__ day of __JUNE__, __05__

Walter C. McMillan, Jr.
Chief Judge, Superior Courts
Middle Judicial Circuit

Judge, __WASHINGTON__ Superior Court

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this Sentence of Probation has been delivered in person to the defendant and he/she instructed regarding the conditions set forth above.

This __6th__ day of __June__, 20 __05__    _____

Copy received and instructions regarding conditions acknowledged.

This __6th__ day of __June__, 20 __05__    _____

Probation Officer

USAO-000203

IN THE SUPERIOR COURT OF _WASHINGTON_ COUNTY
STATE OF GEORGIA

STATE OF GEORGIA          *

                     *

                     *

vs.                  *    Case No. _04-CR-128_

                     *

                     *

_NATHAN EDWARD GUNDY_     *

## ADDITIONAL GENERAL CONDITION OF PROBATION

The probationer shall submit to evaluations and testing relating to rehabilitation and participate in and successfully complete rehabilitative programming as directed by the department.

Ordered at _WASHINGTON COUNTY_ , Georgia, this _6TH_ day of _JUNE_ , 20_05_ .

_(signature)_

Judge of the Superior Courts
Middle Judicial Circuit

Walter C. McMillan, Jr.
Chief Judge, Superior Courts
Middle Judicial Circuit

Defendant has been delivered a copy of and duly instructed regarding this condition of probation and same is acknowledged by our signatures below.

_____  
Probation Supervisor

_____  
Probationer

USAO-000204

ACCUSATION NO. _06 CR 4_
WASHINGTON SUPERIOR COURT, MARCH TERM, 2006

STATE OF GEORGIA

vs.                                    Charge: Burglary

NATHAN EDWARD GUNDY

## ACCUSATION

Filed in office, this _20th_ day of _April_ , 20_06_.

_Jay H. Conner_
CLERK, SUPERIOR COURT

The defendant, NATHAN EDWARD GUNDY, waives being formally arraigned, waives copy of accusation, and pleads _Guilty_. This _20th_ day of _April_ , 20_06_.

_____
DEFENDANT

_____
DEFENDANT'S ATTORNEY

_____
DISTRICT ATTORNEY

WITNESSES FOR THE STATE:

Brad Kennedy, SPD
McArthur Jordan

ATTEST A TRUE COPY

Certified _____

_____
Deputy Clerk Washington County



USAO-000205

IN THE SUPERIOR COURT OF WASHINGTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| STATE OF GEORGIA | * | Accusation No. O6CR4 |
| | * | March Term, 2006 |
| vs. | * | |
| | * | |
| NATHAN EDWARD GUNDY | * | Burglary |

## ACCUSATION

On behalf of the people of the State of Georgia, the undersigned District Attorney or duly appointed Assistant District Attorney for the Middle Judicial Circuit of Georgia, as prosecuting attorney for the county and state aforesaid, does hereby charge and accuse **NATHAN EDWARD GUNDY** with the offense of **BURGLARY** (O.C.G.A. § 16-7-1); for that the said accused on January 8, 2006, in the county aforesaid, did then and there unlawfully, without authority, and with the intent to commit a theft therein, enter the dwelling house of another, to wit: McArthur Jordan, located at 321 Tybee Street, Sandersville, Georgia, contrary to the laws of the state of Georgia, the good order, peace, and dignity thereof.

This ____20th____ day of ____April____, 20_06_.

_____
Assistant District Attorney

Office of the District Attorney
Post Office Drawer J
Swainsboro, Georgia  30401
(478) 237-7846

USAO-000206

## CONSENT TO FILING OF ACCUSATION,
## WAIVER OF GRAND JURY INDICTMENT,
## WAIVER OF JURY TRIAL, PLEA OF GUILTY

The accused having been bound over to the superior court of said county or being confined in jail pending commitment trial or being in jail, having waived commitment trial, does hereby expressly waive indictment by grand jury in accordance with the appropriate provisions of law; and

The aforenamed accused expressly consents to the filing of the foregoing accusation by the District Attorney; and

The aforenamed accused expressly consents that the judge of said superior court may open the court at this time without the presence of either grand jury or traverse jury to receive and act upon the plea of the aforenamed accused; and

The aforenamed accused expressly waives trial by jury and consents to trial by the judge alone without the intervention of a jury upon the foregoing accusation by the District Attorney; and

The aforenamed accused acknowledges that, before any action herein indicated, the accused has been fully advised as to all of his rights in connection with all of the matters here concerned, and all of the action herein taken by him has been taken by him with full knowledge of all such legal rights; and

The aforenamed accused acknowledges that, prior to any of the actions taken by the accused in this matter, the accused has been fully advised as to his rights to the services of an attorney at law in all stages of the proceeding against the accused; and accused has been advised that in the event he is unable to employ an attorney the court will appoint an attorney to represent the accused; and the accused acknowledges that the court in this instance expressly offered to appoint an attorney to advise and represent the accused.

Upon the foregoing accusation, including each and every charge and count therein contained, the aforenamed accused waives formal arraignment, waives copy and list of witnesses, and pleads guilty.

This _____20ᵗʰ_____ day of _____Apr.Y_____, 20__15__.

_____
Accused

_____
Attorney for Accused

_____
District Attorney

USAO-000207

IN THE SUPERIOR COURT OF _____WASHINGTON_____ COUNTY, GEORGIA

STATE OF GEORGIA

CRIMINAL ACTION NO. _06_ - ₽CR - _4_

OFFENSE(S) _BURGLARY_

VS.

_NATHAN EDWARD GUNDY_ , _MARCH_ TERM, 20_06_
OTN: 128268394          DEFENDANT

## FINAL DISPOSITION

| ☒ PLEA: | ☐ VERDICT: | ☐ OTHER DISPOSITION |
|---|---|---|
| | ☐ JURY / ☒ NON-JURY | |
| ☒ NEGOTIATED | ☐ GUILTY ON | ☐ NOLLE PROSEQUI ORDER ON |
| ☒ GUILTY ON COUNT(S) _1_ | COUNT(S)_____ | COUNT(S)_____ |
| ☐ NOLO CONTENDERE ON | ☐ NOT GUILTY ON | ☐ DEAD DOCKET ORDER ON |
| COUNT(S)_____ | COUNT(S)_____ | COUNT(S)_____ |
| ☐ TO LESSER INCLUDED | ☐ GUILTY OF INCLUDED | |
| OFFENSE(S)_____ | OFFENSE(S) OF_____ | |
| | ON COUNT(S)_____ | |
| ON COUNT(S)_____ | | |

~~☐ DEFENDANT WAS ADVISED OF THE RIGHT TO REVIEW BY A SUPERIOR COURTS SENTENCE REVIEW PANEL~~

WHEREAS, the above-named defendant has been found guilty of the above-stated offense(s), it is hereby ORDERED AND ADJUDGED by the Court that the said defendant is hereby sentenced to confinement for a period of _SIX (6) YEARS, CONCURRENT WITH ANY OTHER SENTENCE CURRENTLY SERVING AS OF THIS DATE_

in the State Penal System or such other institution as the Commissioner of the State Department of Corrections or the Court may direct, to be computed as provided by law.

THE DEFENDANT WAS REPRESENTED BY THE HONORABLE _MATTHEW L. WATERS_ , ATTORNEY AT LAW, OF _JOHNSON_ COUNTY, GEORGIA, BY ~~(EMPLOYMENT)~~ (APPOINTMENT).

IT IS SO ORDERED, this _20TH_ day of _APRIL_ , 20_06_ .

Filed in Office This
2ᵗ̲ʰ day of _April_  2006

_____
Clerk, Superior Court

_____
Judge, Superior Court of Said County
Middle Judicial Circuit of Georgia

Walter C. McMillan, Jr
Chief Judge, Superior Courts
Middle Judicial Circuit

USAO-000203